Filed 10/21/14  Opinion following rehearing

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| OLD REPUBLIC CONSTRUCTION PROGRAM GROUP,<br><br>   Plaintiff and Respondent,<br><br>        v.<br><br>THE BOCCARDO LAW FIRM, INC.<br><br>   Defendant and Appellant. | H037989<br>(Santa Clara County<br> Super. Ct. No. CV203288) |


Defendants Boccardo Law Firm (Boccardo) and one of its partners, John C. Stein, bring this appeal from an order denying their motion under the anti-SLAPP law (Code Civ. Proc., § 425.16 (§ 425.16)), to strike three causes of action asserted against them by plaintiff  Old Republic Construction Program Group (Old Republic).  The question presented is whether the statute applies to claims alleging that defendants wrongfully withdrew settlement funds derived from a now-defunct lawsuit, which they had deposited in their trust account pursuant to a stipulation requiring Old Republic's consent to any withdrawal.  In answering this question we apply two principles that have perhaps not been as clearly articulated in the case law as they should be:  (1) in determining whether a cause of action arises from conduct protected by the anti-SLAPP law, the focus is on the *wrongful, injurious* acts or omissions identified in the complaint, and whether those acts or omissions come within the statute's description of protected conduct; and (2) unless the wrongful conduct is communicative in character, it is protected by the statute only if

it was undertaken in connection with an issue of public importance. Because the withdrawal of funds underlying the causes of action at issue was neither communicative nor related to an issue of public interest, the trial court properly denied a motion to dismiss those causes of action. We will therefore affirm the order.

## BACKGROUND

### A. *The Carabello Action*

Defendants Boccardo and Stein filed an action for damages in San Joaquin Superior Court on behalf of Albert Carabello, alleging that he had been injured when his pickup collided with a vehicle operated by Beverly Casby, the defendant in that action.[1] Casby was insured under a policy of automobile insurance with liability coverage of $100,000.

It is apparently undisputed that at the time of the collision, Carabello was acting in the course and scope of his employment. Plaintiff Old Republic was the workers' compensation insurer for Carabello's employer. It provided benefits which it claims exceeded $100,000. It filed a complaint in intervention in the San Joaquin action, asserting a right to reimbursement of these expenditures.

In answer to both Carabello's and Old Republic's complaints, Casby raised the affirmative defense of *Witt v. Jackson* (1961) 57 Cal.2d 57, which limits the ability of an employer, or its insurer, to obtain reimbursement out of an injured worker's recovery against a third party where the employer's own negligence contributed to the worker's injuries. (See 2 Witkin, Summary of Cal. Law (10th ed. 2005) Workers Compensation, § 92, pp. 653-655; *Levels v. Growers Ammonia Supply Co.* (1975) 48 Cal.App.3d 443.)

Carabello and Casby agreed to settle the case for her $100,000 policy limits. Old Republic's claim to reimbursement, however, remained unresolved. Accordingly,

---

[1] Both parties' spouses were also joined in the action, but this fact has not been mentioned by the parties and will likewise be disregarded by us.

2

Casby's insurer made the settlement check payable to Carabello, Boccardo, and Old Republic. Stein and counsel for Old Republic therefore signed a written stipulation stating "that the $100,000.00 settlement money . . . will be deposited into an interest bearing account" and that "[s]ignatures of both parties will be required to withdraw any money." It was apparently understood that the funds would be placed in defendants' client trust account. The settlement check was duly endorsed and deposited.

On December 14, 2009—the same day he signed the stipulation—counsel for Old Republic filed a motion "for apportionment of settlement proceeds," to be heard on January 10, 2010. The motion asserted an entitlement to the entire settlement fund, but did not mention the issue of employer negligence. Stein later asserted that he objected to the motion at a December 18 case management conference, arguing that it "was not well taken because, as part of the settlement agreement, we had agreed to litigate against the Intervener and fully assert *Witt v. Jackson* (1961) 2 Cal.2d 57, as a defense to their lien." According to him, the court set August 9, 2010, for a "[t]rial of that matter," to be preceded by a mandatory settlement conference on July 6, 2010.

After the December conference, Old Republic withdrew its motion for apportionment. About a month later, on January 19, 2010, counsel for Old Republic filed a notice of lien seeking to recover $111,026.33 "against any settlement of [*sic*] judgment in this action." At the same time, counsel filed a request to dismiss Old Republic's complaint in intervention with prejudice. The record contains no explanation for this action. Nor does it show that Old Republic notified Boccardo or Stein of the dismissal. About three weeks later, Stein dismissed the Carabello complaint with prejudice. The request recited that it was made "[a]s to defendants Beverly Casby and Gerald Casby only" and that "Plaintiff and Intervenor have Trial August 9, 2010 to resolve liens." However, the dismissal of the complaint meant that there was no longer any pleading before the court seeking affirmative relief.

3

The trial court apparently conducted a settlement conference on July 6, 2010. Stein later asserted that it was during this conference, or shortly before it, that he became aware of Old Republic's dismissal of the complaint in intervention. Upon learning of it, he sought a hearing on shortened time for a motion authorizing release of the settlement funds to Carabello. He argued that by dismissing its pleading, Old Republic had forfeited any right to litigate the issue of employer negligence, and thus to recover on its lien. The trial court, however, concluded that the dismissal of all affirmative pleadings had deprived it of any power to grant the requested relief. In a formal order the court wrote, "This case has been dismissed in its entirety. This Court has no further jurisdiction." It does not appear that either party sought relief from this order.

On July 9, 2010, Stein wrote to counsel for Old Republic indicating that he intended to distribute the deposited funds.[2] He again asserted that by dismissing its complaint Old Republic had given up the right to seek reimbursement. He took issue with a prior assertion by opposing counsel "that the matter can be litigated before the WCAB [(Workers' Compensation Appeals Board)]." He offered to forbear from withdrawal for one week to "give you time to go to the WCAB and get a Restraining Order prohibiting me from disbursing my settlement." Old Republic apparently did nothing. On July 28, Stein wrote that having just received the court's formal order disclaiming the power to grant relief, he was disbursing the funds to his client forthwith.

**B. The Workers' Compensation Board Petition**

On September 14, 2010, Old Republic petitioned the WCAB to order disbursement of the settlement proceeds. Stein filed a trial brief in which he conceded that the WCAB had jurisdiction to determine Old Republic's entitlement to credit against future benefits. He argued, however, that the superior court had exclusive jurisdiction to

_____

[2] Stein later declared that at the time of this letter, his client Carabello was "about to lose his house" and was insisting on release of the funds.

determine the *Witt v. Jackson* issues as they might affect the existing settlement proceeds, and that Old Republic had lost the opportunity to secure an adjudication of that issue by dismissing its complaint in intervention.

On February 2, 2011, a workers' compensation judge denied Old Republic's petition for disbursement. He found that the settlement funds had already been "disbursed by applicant's counsel." He also concluded that the WCAB lacked jurisdiction to grant the relief sought by Old Republic. On April 25, 2011, the WCAB granted reconsideration of that decision "to further study the factual and legal issues in this case." The WCAB apparently issued a decision on September 12, 2013, finding that it had jurisdiction over the issues presented, and remanding them for trial.[3]

### C. The Present Action

Old Republic filed the complaint in this matter on June 16, 2011. Although it names only Boccardo and Stein as defendants, it alleges that the stipulation of December 14, 2009, was a binding contract "between plaintiff, Albert Carrabello [*sic*], and The Boccardo Law Firm." The first cause of action alleges that "defendants"—i.e., Boccardo and Stein—breached this contract "by disbursing the settlement proceeds without the signature and/or consent of [Old Republic]." The second cause of action charges defendants with fraudulently inducing Old Republic to assent to the placement of funds in Boccardo's trust account by falsely promising not to distribute funds "until both

---

[3] Defendants notified this court of the WCAB decision about six months after it issued, following this court's promulgation of notice of oral argument. We were presented with no formal request to augment the record (see Cal. Rules of Court, rule 8.155), or for judicial notice (Evid. Code, § 459), and no certified copy of the decision (see *People v. Preslie* (1977) 70 Cal.App.3d 486, 494). No request to dismiss the appeal was made. (See Cal. Rules of Court, rule 8.244(c).) This court has expended considerable effort in resolving the difficult and important issues presented by this appeal, none of which appear to be subject to adjudication in the WCAB proceeding. Therefore, insofar as the filing described above conveyed a suggestion of mootness, we reject the suggestion and decline to dismiss the appeal on our own motion.

5

parties agreed in [*sic*] the distribution amount." The third cause of action characterizes defendants' distribution of the funds as conversion. The fourth posits that defendants' withdrawal of funds breached a fiduciary duty to Old Republic. The fifth alleges that defendants breached a duty of care to Old Republic by "negligently and carelessly distribut[ing] the funds" without Old Republic's consent. The sixth cause of action seeks declaratory relief, in that Old Republic "conten[d]s it is entitled to some or all of the settlement proceeds and defendants contend that plaintiff is not entitled to any and has [*sic*] in fact distributed the settlement proceeds."

On August 5, 2011, defendants demurred to all causes of action. The court sustained the demurrer with leave to amend as to the third cause of action (conversion) and fourth cause of action (breach of fiduciary duty) on grounds of failure to state facts sufficient to constitute a cause of action. The demurrer was otherwise overruled. Old Republic did not amend the complaint.

On November 8, 2011, defendants filed a motion to dismiss the remaining causes of action under the anti-SLAPP law (§ 425.16). They prayed in the alternative to stay the matter pending disposition of the WCAB proceeding. The court granted the motion to strike as to the second cause of action (fraud), but denied it with respect the first (contract), fifth (negligence), and sixth (declaratory relief) causes of action. The court denied the motion to stay proceedings. Defendants promptly filed a notice of appeal.[4]

---

[4] Although we have found no case squarely so holding, it appears that an immediate appeal by the moving party will lie from an order denying a SLAPP motion as to some causes of action, even though the motion is granted as to others. The statute does not by its terms impose any limitation on the right to appeal, stating only that "An order granting or denying a special motion to strike shall be appealable under Section 904.1." (§ 425.16, subd. (i); see Code Civ. Proc., § 904.1, subd. (13) [authorizing appeal "[f]rom an order granting or denying a special motion to strike under Section 425.16"].) Many courts have entertained appeals from orders granting or denying a SLAPP motion as to some but not all causes of action. (E.g., *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 757 [appeal from order striking two of six causes of action]; *Fontani v. Wells Fargo Investments, LLC* (2005) 129 Cal.App.4th 719, 725 [order striking two of

6

## I. Procedural Framework

The anti-SLAPP law authorizes a defendant to bring a "Special Motion to Strike" any cause of action "arising from any act of [the defendant] in furtherance of [the defendant's] right of petition or free speech . . . in connection with a public issue." (§ 425.16, subd. (b)(1).) The statute goes on to enumerate four classes of conduct, described in greater detail below, that come within its protection. (*Id*., subd. (e).) Any cause of action "arising from" protected conduct shall be stricken on the defendant's motion, unless the plaintiff establishes a "probability that [he or she] will prevail on the claim." (*Id*., subd. (b)(1).)

The statute thus mandates a two-step analysis. The first step is to determine whether the moving party has shown that the targeted cause of action arises from conduct protected by the statute. (*Martinez v. Metabolife International, Inc.* (2003) 113 Cal.App.4th 181, 186.) If the answer is yes, the court considers whether the plaintiff has established the requisite probability of success. (*Ibid*.) As to both questions, a reviewing court applies its independent judgment, without deference to the trial court's ruling. (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 478.) Of course, there is no occasion to consider the likelihood of success unless the action arises from protected activity.

## II. For Purposes of the Anti-SLAPP Statute, the Challenged Causes of Action Arose from Defendants' Withdrawal of Funds, Not from the Parties' Stipulation

We are concerned on this appeal with only three of Old Republic's six original causes of action: breach of contract, negligence, and declaratory relief. The question whether these causes of action arise from protected activity involves two subsidiary

---

10 causes of action], disapproved on another point in *Kibler v. Northern Inyo County Local Hosp. Dist.* (2006) 39 Cal.4th 192, 203, fn. 5.)

inquiries: (1) From what acts or omissions do these causes of action arise, for purposes of applying this statute; and (2) do those acts or omissions come within the statute's definition of protected conduct? With respect to the first question, defendants assert at one point in their brief that the targeted causes of action "all aris[e] from [the] stipulation" which resulted in the deposit of settlement funds in defendants' trust account. If true this would bring these causes of action within the statute's protection, because the stipulation was a "writing made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(2).) The function of the stipulation was to hold the settlement funds in stasis pending an adjudication of Old Republic's right to reimbursement—an issue that then was, as the court below noted, "still under consideration by the San Joaquin County Superior Court." In this regard the case appears materially identical to *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90, where the court stated that the defendant's "negotiation and execution of [a] Release . . . involved 'statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body' " as protected under section 425.16, subdivision (e)(2). We see no reason to doubt that this same conclusion applies here.

However, this only establishes that any cause of action arising from the stipulation would be protected by the statute. It leaves unanswered the question whether the three causes of action before us arose from the stipulation. ((§ 425.16, subd. (b)(1).) The question whether a cause of action arises from specified conduct for purposes of the statute depends on " 'the *principal thrust* or *gravamen* of the plaintiff's cause of action.' " (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 575, quoting *Martinez v. Metabolife International*, *supra*, 113 Cal.App.4th 181, 188; see *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519-520; *In re Episcopal Church Cases* (2009) 45 Cal.4th 467, 477; cf. *Wang v. Wal–Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 802 [applicability of statute depends on "principal thrust or

8

predominant nature of the complaint"].) It is not enough that the complaint refers to protected activity. " '[W]hen the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.' " (*Robles v. Chalilpoyil, supra,* 181 Cal.App.4th at p. 575.)

The concepts of "principal thrust" and "gravamen," however, may be too indefinite and abstract to provide a clear rule with predictable results. (See *Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1153 [test for determining applicable limitations period variously stated as " ' "the 'gravamen' of the cause of action," ' " " ' " '[t]he nature of the right sued upon,' " ' " and " 'the primary interest invaded by defendant's wrongful conduct' "]; *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 880 [equating " 'gravamen' " with "principal purpose . . . of the action"]; *Cheong Yu Yee v. Cheung* (2013) 220 Cal.App.4th 184, 194 [same]; Black's Law Dict. (9th ed. 2009) p. 770, col. 1 [defining "gravamen" as "[t]he substantial point or essence of a claim, grievance, or complaint"]; 6 Oxford English Dict. (2d ed. 1989) p. 781 ["[t]he particular part of an accusation that bears most heavily on the person accused"]; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 506, p. 648 [in limitations context, where contract may sound in both contract and tort, courts sometimes "arbitrarily assign a 'gravamen' to the suit, subjecting it to the shorter tort statute"].)

Fortunately the cases suggest a more concrete test: a cause of action arises from protected conduct if the *wrongful, injurious act(s)* alleged by the plaintiff constitute protected conduct. (See *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1389 ["Determining the gravamen of the claims requires examination of the specific acts of alleged wrongdoing and not just the form of the plaintiff's causes of action."]; *ibid.* [court reviews record "to determine what conduct is actually being challenged"]; *Martinez v. Metabolife International*, *supra*, 113 Cal.App.4th 181, 188

9

[protected speech, though mentioned in complaint, was not gravamen of claims; it was "largely unrelated to and entirely distinct from the wrongful, injury-causing conduct" on which claims rested]; *id.* at p. 189 ["wrongful and injury-causing conduct" alleged by plaintiff was distinct from any engagement by defendant in expressive conduct]; *id.* at p. 193 [alleged "wrongful injury producing conduct" was manufacture and sale of defective product, not labeling and advertising of product]; *Scott v. Metabolife Intern., Inc.* (2004) 115 Cal.App.4th 404, 416-417 [although warranty and fraud causes of action would require "proof of some speech," they did not arise out of protected activities; "the wrongful injury-producing conduct on which these claims are based arises from the nature of the defective product"]; *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1399 [SLAPP motion would not lie merely because charges of unlawful claims practices relied on insurer's submissions to public agency; insurer's invocation of statute "confuse[d] [its] allegedly wrongful acts with the *evidence* that plaintiff will need to prove such misconduct"]; *ibid.* ["We thus conclude that the alleged  wrongful acts of State Farm were not done in furtherance of any claimed right of petition or free speech."]; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, some italics added [for cause of action to " 'aris[e] from' " protected activity, "the defendant's *act underlying the plaintiff's cause of action* must *itself* have been an act in furtherance of the right of petition or free speech.  [Citation.]  In the anti-SLAPP context, the critical point is *whether the plaintiff's cause of action* was *based on* an act in furtherance of the defendant's right of petition or free speech.  [Citations.]"]; *Navellier v. Sletten*, *supra*, 29 Cal.4th 82, 92, second italics added [statute's "definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that *gives rise to his or her asserted liability*—and whether that activity constitutes protected speech or petitioning"].)

We think the foregoing judicial authorities, and the statute itself, are best understood to mean that a cause of action can only be said to arise from protected conduct if it alleges at least one *wrongful* act—conduct allegedly *breaching a duty and thereby injuring the plaintiff*—that falls within the act's definition of protected conduct.

The causes of action at issue here refer to, and may depend on, defendants' having entered into the stipulation, which was itself protected conduct; but they do not assert that there was anything wrongful about that conduct. In this regard the three causes of action now before us differ from the fraud cause of action, as to which the trial court granted the SLAPP motion. As the court recognized, that cause of action "ar[o]s[e] from the stipulation." The underlying wrongful conduct was defendants' alleged *entry into the stipulation* without the intention to be bound by it, thereby inducing Old Republic to do likewise and depriving it of control over the settlement funds. With respect to the remaining three claims, however, there was nothing wrongful about the stipulation itself; entry into it is not the injurious conduct alleged. Rather, under those three causes of action Old Republic's injury arose from defendants' withdrawal of the funds that were the subject matter of the stipulation. That is the conduct by which defendants allegedly breached the contract between the parties, violated a duty of care, and injured Old Republic. It is that conduct from which these causes of action must be held to arise. For purposes of the SLAPP statute, the stipulation must be viewed as incidental. (Cf. *Navellier v. Sletten*, *supra*, 29 Cal.4th 82, 92 [recognizing distinction between formation and breach of settlement agreement, but holding that under facts there, both were protected conduct].)

To hold otherwise would produce consequences the Legislature cannot have intended. If the protected status of an underlying agreement furnished sufficient ground to invoke the anti-SLAPP statute against a claim for breach of that agreement, it would follow that *every* suit to enforce a settlement agreement would be subject at the threshold

11

to a SLAPP motion. Such a regime would significantly diminish the utility of such agreements, reduce the incentive for parties to enter into them, and thereby magnify the workload on courts, with attendant delay and expense for those who must resort to them. It follows that merely citing a settlement agreement as the basis for a duty allegedly breached by the defendant is not enough, by itself, to bring a cause of action for the breach within the statute. The trial court correctly concluded that these three causes of action did not arise from the parties' stipulation for purposes of the SLAPP act. It was the withdrawal of funds that was the wrongful conduct constituting the gravamen of these causes of action.

### *III. The Withdrawal of Funds Was Not Protected Conduct Because It Was Neither Communicative Nor Connected with an Issue of Public Interest*

Given the foregoing conclusion, the question becomes whether the withdrawal of funds was itself protected by the statute. As noted above, section 425.16, subdivision (b), describes the activity protected under the statute as "any act of [the defendant] in furtherance of [the defendant's] right of petition or free speech . . . *in connection with a public issue*." (Italics added.) Section 425.16, subdivision (e) (§ 425.16(e)), identifies four classes of activities that will be deemed to fall within this description: "(1) any *written or oral statement* or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any *written or oral statement* or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any *written or oral statement* or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) *any other conduct* in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with a public issue or an issue of public interest*." (Italics added.)

12

Defendants do not contend that the withdrawal of funds was a "written or oral statement" so as to fall within any of the first three numbered clauses of section 425.16(e). Nor do they contend that the withdrawal of funds was connected with a public issue so as to satisfy the concluding proviso of the fourth clause (§ 425.16, subd. (e)(4) (§ 425.16(e)(4) or clause (4)). They contend, however, that the "public issue" proviso applies only to conduct involving the exercise of *speech* rights, and does not limit the statute's application to conduct furthering the exercise of the right of *petition*. Since the withdrawal of funds was done in furtherance of their client's right of petition—i.e., to secure redress for a civil wrong—they contend that it was protected by the statute, even though it had no connection with any issue of pubic moment.[5]

Defendants contend that clause (4) is burdened with an ambiguity in that "the final portion—beginning with the words 'in connection with'—could either modify both constitutional rights or else modify only the second right of free speech." As they parse the clause, it "affords . . . SLAPP protection to [1] 'any other conduct in furtherance of the exercise of the constitutional right of petition <u>or</u> [2] the constitutional right of free speech in connection with a public issue or an issue of public interest.' " But this deconstruction of the clause cannot withstand scrutiny. Grammatically, clause (4) is, in its entirety, an object of the verb "includes." It is operated upon by the introductory phrase, "As used in this section, 'act in furtherance of a person's right or petition or free speech under the United States or California Constitution in connection with a public issue' *includes* . . . ." (§ 425.16, italics added.) Defendants' parsing would thus produce the sentence, " '[A]ct . . .' . . . includes . . . the constitutional right of free speech . . . ."

---

   [5] This issue of first impression was first raised in defendants' petition for rehearing. Ordinarily we might treat it as forfeited, but having certified our opinion for publication we could hardly refuse to address a point that, if sound, would undermine our entire analysis.

13

(§ 425.16(e).) This of course is nonsensical. The correct object of "includes" is "conduct." That word in turn is modified by the two succeeding prepositional phrases, joined by an implied conjunction, such that a correct parsing of the statute yields the following: " '[A]ct . . .' . . . includes . . . (4) any other conduct [1] in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech [and] [2] in connection with a public issue or an issue of public interest." (§ 425.16(e).)

This reading is reinforced by the fact that both prepositional phrases describe the manner on which some *action* is taken. As a matter of grammar they cannot be characterized as true adverbial phrases, because there is no verb for them to modify. But the noun "conduct" distinctly refers to action, and can be modified quite intelligibly by these two quasi-adverbial phrases; that is, one can properly characterize conduct as undertaken in furtherance of the exercise of a right, and in connection with a public issue. Under defendants' reading, in contrast, the phrase "in connection with a public issue" would modify "right [of free speech]," which describes a pure phenomenon—a *thing*— that cannot sensibly be modified with what is in substance (if not in strict grammatical form) an adverbial phrase. It would therefore be infelicitous, at best, to speak of a "right in connection with a public issue." The rights to speak and petition exist independently of any public issue with which they may (or may not) be connected in a given instance. The presence or absence of such an issue is a circumstance that may trigger, enlarge, or condition the right, or more precisely its exercise, but it cannot properly be conceived as a characteristic of the right itself. If one speaks of "a trip in the car on the highway in connection with grandmother's birthday," there are three antecedent nouns to which the concluding phrase ("in connection with grandmother's birthday") might conceivably refer, but only one to which it can *sensibly* refer: "trip," which happens to be the farthest one away from the phrase. Similarly, "in connection with a public issue . . ." refers most sensibly to "conduct," and least sensibly to "right of free speech."

14

The foregoing analysis disposes of defendants' invocation of the so-called last antecedent rule, which declares that " 'qualifying words and phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.' " (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680, quoted in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1114 (*Briggs*).)  The operation of that rule depends on the presence of multiple antecedents, and as already indicated the phrase at issue here is most reasonably parsed as having only one antecedent, i.e., "conduct."[6]

---

[6] Even if we accepted defendants' grammatical parsing of the provision we would question the utility of the last antecedent doctrine to resolve the resulting ambiguity.  The paradigmatic setting for application of that doctrine is "where a modifying phrase appears after a *list* of multiple items or phrases.  [Citations.]" (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 530; italics added.)  Although it has been applied in cases where there are only two antecedents, its force in such settings diminishes, or should diminish, in accordance with ordinary English usage.  Thus if a statute directed border inspectors to confiscate "lemons, limes, and apples not grown in California," any fluent speaker of English would acknowledge at least a substantial possibility that the modifying phrase ("not grown in California") was intended to modify only its immediate antecedent ("apples").  However, if the statute referred only to "lemons and limes not grown in California," most English speakers would understand the phrase to modify both antecedents.  To be sure, this is partly due to the similarity of the things described, and the corresponding unlikelihood that the Legislature meant to distinguish between them; a reference to "oranges and apples not grown in California" might be more ambiguous.

In all of these cases we would search diligently for a surer guide to legislative intent before resorting to the doctrine of the last antecedent, which has been criticized as conforming poorly to linguistic reality and as providing an unreliable method for solving the problem it purports to address.  (See LeClercq, Doctrine of the Last Antecedent: The Mystifying Morass of Ambiguous Modifiers (1996) 2 J. Legal Writing Inst. 81, 86 ["English does not have a set of rules that eliminates ambiguity; it has linguistic principles that help readers unravel meaning.  Specifically, no English-language rule resolves the ambiguity that a modifier creates when it has more than one antecedent."]; *id.* at p. 89 [doctrine "contradicts other linguistic principles" and "does not provide a concrete conclusion to the problem of ambiguous modifiers"]; Ross, A Rule of Last Resort: A History of the Doctrine of the Last Antecedent in the United States Supreme

The strained character of defendants' proposed reading of the statute is reflected in the fact that a number of decisions have addressed the public-issue limitation in section 425.16(e)(4), and none has even appeared to so much as notice a possibility that the limitation might be understood to apply only to speech-related activity, and not to petitioning activity. In *Briggs*, *supra*, 19 Cal.4th 1106, the California Supreme Court read the limitation as applicable to all noncommunicative conduct. The plaintiffs there argued that by virtue of the introductory language of the statute, it did not apply to *any* kind of speech or petitioning activity unless it involved an issue of public significance. In rejecting this contention as to the first two categories of activity enumerated in section 425.16(e), the court emphasized that those clauses lacked any reference to public issues whereas "[c]lauses (3) and (4) . . ., concerning statements made in public fora and 'other conduct' implicating *speech or petition* rights, include an *express 'issue of public interest' limitation*." (*Briggs*, *supra*, 19 Cal.4th at p. 1117, italics added.) The inclusion of this language in the last two clauses, and its omission from the first two, required the conclusion that "*the Legislature intended different 'issue' requirements to apply to anti-SLAPP motions brought under clauses (3) and (4)* of subdivision (e) than to motions brought under clauses (1) and (2). [Citation.]" (*Ibid*., italics added.) Were the plaintiffs' proposed reading correct, the court continued, "no purpose would be served by the Legislature's specification in clauses (3) and (4) that *covered issues must be 'of public interest.'* " (*Id.* at p. 1118, italics added.)

Defendants acknowledge that the Supreme Court's gloss on these provisions contradicts their proposed reading of the statute, but they invoke the rule that "language

Court (2010) 2 Southwestern L.Rev. 325, 336 ["the Rule is so flexible that calling it a rule at all may be oxymoronic"]; *id.* at p. 337 ["Because the question of whether to apply the Rule essentially amounts to a coin toss, it seems entirely implausible to rely on it as a method of inferring actual congressional intent or meaning."].)

contained in a judicial opinion is 'to be understood in the light of the facts and issue then before the court, and an opinion is not authority for a proposition not therein considered.' " (*People v. Banks* (1993) 6 Cal.4th 926, 945.) We ourselves have often acknowledged that principle. (See, e.g., *In re E.O.* (2010) 188 Cal.App.4th 1149, 1156.) However when a court has treated statutory language as having one meaning, it is at least some evidence that a different meaning is not obvious. That inference becomes weightier as more courts address the same language and come away with the same impression of its meaning and breadth, without acknowledging a competing interpretation urged only later.

We ourselves have twice issued published decisions that are irreconcilable with defendants' proposed reading not only in dicta, but in their results. In *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, we considered the application of the anti-SLAPP law to claims arising from the conduct of a law firm in prior litigation, including noncommunicative activities such as "stonewalling discovery" (*id.* at p. 1226) and representation of parties with "an irreconcilable conflict of interest" (*id.* at p. 1227). We rejected the contention that the statute did not "requir[e] a public" interest connection with respect to such claims: "[O]nly one of the four categories of protected activity covers [noncommunicative] conduct (§ 425.16, subd. (e)(4) . . .) and that type of protected activity must have taken place 'in connection with a public issue or an issue of public interest.' (See *Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th at pp. 1117, 1123, 81 Cal.Rptr.2d 471, 969 P.2d 564.)" (*Id.* at p. 1226.) We noted the absence of any "showing that any of defendants' allegedly wrongful conduct, not consisting of statements or writings, occurred 'in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e)(4).)" (*Id.* at p. 1227.) We concluded that the charged conduct fell outside the statute's protection.

We reaffirmed that view the following year in *Robles v. Chalilpoyil, supra,* 181 Cal.App.4th 566, 580, footnote 2, where we addressed a claim arising from conduct by an

17

expert witness in a wrongful death action. Among the instances of allegedly wrongful conduct was the expert's " 'failing to continue to act as an independent expert and/or disrupting the prosecution of the [previous] case by entering into a business relationship' " impairing his utility as an expert. (*Id.* at p. 576.) This conduct, we observed, "was not a written or oral statement, nor was it 'conduct . . . in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e)(4).)" (*Id.* at p. 576.) Accordingly it was not within the statute's protection. (*Ibid.*)

Other courts have likewise noted the public interest requirement without suggesting that it might apply only to speech-related conduct, as distinct from petitioning conduct. (See *Blackburn v. Brady* (2004) 116 Cal.App.4th 670, 675 ["only if the defendant's alleged acts or statements fall under the third or fourth categories of subdivision (e) of section 425.16, is the defendant required to independently demonstrate that the matter is a 'public issue' within the statute's meaning"]; *Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1515 ["If the alleged protected activity occurs in the context of a public or official proceeding, as stated above in (1) or (2), there is no additional requirement that it be connected with an issue of public importance."]; *Martinez v. Metabolife International*, *supra*, 113 Cal.App.4th 181, 188, italics added ["[A] defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant."].)[7]

---

[7] We are aware of two decisions that find petitioning conduct to be protected by the statute without requiring any relationship to a public issue. (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 671-672; *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 157-159.) Neither appears to rest on defendants' proposed reading of the statute. Rather they seem to have overlooked the "public interest" limitation entirely. We have previously questioned the soundness of the former insofar as it suggests that the statute's protection may encompass noncommunicative conduct unconnected to any public issue. (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP*, *supra*, 179 Cal.App.4th at p. 1226; *Robles v.*

18

While none of these cases is binding authority on the question before us, their complete failure to even perceive the ambiguity asserted by defendants is a strong indication that defendants' proposed interpretation is neither natural nor sound.

Defendants contend, however, that whatever the Supreme Court might have said in dicta, its *reasoning* in *Briggs* actually supports their position. They first allude to the doctrine of the last antecedent, which the court invoked there (*Briggs*, *supra*, 19 Cal.4th at p. 114), but which we have already found inapplicable here. They then invoke the principle that if the Legislature uses different words or phrases where it might have used the same one, it will be supposed to have intended them to have different meanings. (See *Id.* at p. 1117.) They contend that this principle applies here because the statute elsewhere refers to "the constitutional rights of freedom of speech and petition" (§ 425.16, subd. (a)), and to a "person's right of petition or free speech" (*id*., subd. (b)(1)), which defendants contrast with section 425.16(e)(4)'s reference to "the constitutional right of petition or the constitutional right of free speech." We can make nothing of this contrast, any more than we can make something of the statute's initial reference to the right of petition "for the redress of grievances," after which the quoted phrase does not appear again. Defendants allude to other principles of statutory construction, but we find none of them persuasive.

Defendants assert that "[o]ne of the most compelling reasons" for adopting their proposed reading of the statute is the existence of "fundamental" and "crucial" differences between speech and petition rights. As we understand the supporting discussion, the essential difference asserted by defendants is that *all* petitioning activity

---

*Chalilpoyil*, *supra*, 181 Cal.App.4th at p. 580, fn. 2.) We have similar reservations concerning the latter, which was an action against a law firm for its conduct in prosecuting and settling a class action. (*Thayer*, *supra*, at p. 145.) The court did not discuss whether the specific conduct at issue was communicative or whether, if not, it was subject to a public issue requirement.

19

implicates the public interest to some degree because it is by its nature addressed or directed to some official or quasi-official body, whereas a considerable proportion of speech-related activity is entirely private. This may be true in some sense, but it provides no reason to conclude that non-communicative, allegedly wrongful conduct related to an entirely private dispute should acquire greater protection merely because the dispute has given rise to a lawsuit. Suppose that one homeowner asserts, and a second homeowner denies, that the second owner's tree encroaches on the first owner's property. If the first owner trespasses upon the other's land in order to post a written protest of the encroachment, the trespass constitutes conduct related to an exercise of speech rights, but the anti-SLAPP law cannot be invoked in a resulting trespass suit because the conduct is (1) noncommunicative, and (2) unconnected with any public issue. We see no reason that the result should change merely because the defendant asserts that he trespassed in order to take photographs for use in a lawsuit. No one but the parties, and perhaps their families, have any interest in the dispute, except in the highly attenuated way that all citizens are interested in an ordered system of dispute resolution. But at that level of abstraction it can be said with at least equal force that all citizens are interested in the right of free expression. Given the potential costs and burdens represented by interposition of the anti-SLAPP law into any controversy, the Legislature would act quite reasonably, and indeed commendably, by preventing the parties in such purely private cases from burdening the courts, the taxpayers, and the litigants with an anti-SLAPP motion. A purely private controversy arising from noncommunicative conduct does not become a public concern merely because one of the parties elects to resort to the courts. Any disputant is free to do so, of course, but in the absence of some issue implicating the public interest there is no apparent reason to permit him or her to invoke the potentially dilatory and duplicative proceedings authorized by the anti-SLAPP law.

20

Defendants' arguments to the contrary overlook the core purpose of the anti-SLAPP law, which is not to pose new impediments to all lawsuits arising from speech and petitioning activity but to remedy a very specific pattern by which *contestants in the arena of public affairs* were using meritless litigation as a device to silence and punish their adversaries.  (See § 425.16, subds. (a), (b)(1).)[8]  To avoid underinclusion, the Legislature extended this protection to all *essential* petitioning activity, i.e., *statements* made in, or concerning, official proceedings, including lawsuits.  (§ 425.16, subds. (e)(1), (e)(2).)  It also extended the statute's special protections to some public speech (§ 425.16, subd. (e)(3)) and some noncommunicative conduct  (§ 425.16(e)(4)); but in order to avoid *over*inclusiveness—or any more overinclusiveness than was necessary—it extended this special protection to those forms of conduct only to the extent that they implicate public issues.

Defendants suggest that the Legislature might have been particularly anxious to limit the statute's application to noncommunicative speech-related conduct out of fear that claims arising from that conduct would impose a greater burden on the courts than claims arising from petition-related conduct.  They "contend[]," with no attempt at substantiation, that "there are many more free speech SLAPP cases than there are petition cases."  We very much doubt the accuracy of this assertion.  Defendants cite a

___

[8]  "(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  The Legislature finds and declares that it is the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.  To this end, this section shall be construed liberally.

"(b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike . . . ."  (§ 425.16.)

21

particularly troublesome case where a student and his parents sued other students due to " 'cyberbullying.' " (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1218.) But for every anti-SLAPP order coming before this court in a case arising from the exercise of speech rights, we see many cases of what might be called recursive litigation, where—as here— the anti-SLAPP law is invoked after one party sues another over the latter's conduct in litigation. Indeed, of the 16 SLAPP cases cited in defendants' own supplemental brief, only 5—less than a third—arose from pure speech or speech-related conduct unrelated to petitioning activity.[9] Eight arose (or were claimed to arise) from litigation-related conduct,[10] while 3 arose from other petitioning activity.[11]

Defendants raise several other arguments in support of their reading of the statute. They suggest that it would be anomalous to withhold the protection of the anti-SLAPP law from noncommunicative petitioning activity in litigation over purely private issues, because such conduct may be immunized by the litigation privilege (Civ. Code, § 47,

---

[9] See *Averill v. Superior Court* (1996) 42 Cal.App.4th 1170; *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036; *D.C. v. R.R.*, *supra*, 182 Cal.App.4th 1190; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855; *Zhao v. Wong* (1996) 48 Cal.App.4th 1114, disapproved in Briggs, supra, 19 Cal.4th at p. 1123, fn. 10. Significantly, all but one of these cases were decided within five years of the enactment of the anti-SLAPP law. This suggests that the proportion of current anti-SLAPP filings arising from non-litigation-related conduct is even lower—perhaps much lower—than this sample suggests.

[10] See *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083; *Flatley v. Mauro* (2006) 39 Cal.4th 299; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton*, *supra*, 133 Cal.App.4th 658; *PrediWave Corp. v. Simpson Thacher & Bartlett LLP*, *supra*, 179 Cal.App.4th 1204; *Robles v. Chalilpoyil*, *supra*, 181 Cal.App.4th 566; *Rusheen v. Cohen* (2006) 37 Cal.4th 1048; *Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385; *Thayer v. Kabateck Brown Kellner LLP*, *supra*, 207 Cal.App.4th 141.

[11] See *Briggs*, *supra*, 19 Cal.4th 1106; *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049; *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790.

22

subd. (b)), the Noerr-Pennington doctrine,[12] or both.  The logic of this argument is not easy to trace.  If conduct on which a lawsuit rests is immunized by the substantive law, then the lawsuit will ultimately be resolved against the plaintiff.  The question under the anti-SLAPP law is whether the lawsuit threatens the public interest in a manner justifying the extraordinary remedy of a special motion to strike, with all of the potential added burdens that procedure represents for the parties and for parties in other suits whose resolution is delayed while judicial resources are expended on expedited procedures under the act.  In effect the act permits some defendants to leap ahead of others, regardless of the merits in either case.  The availability of substantive defenses such as privilege and *Noerr-Pennington* has no apparent bearing on the balance to be struck between these concerns—or more precisely, the balance that has been struck by the Legislature.

The court properly denied defendants' motion to summarily dismiss the first, fifth, and sixth causes of action under the anti-SLAPP statute.  Nothing in our opinion should be understood to suggest that these causes of action are meritorious.  We are solely concerned with the question whether they are subject to the extraordinary remedy of expedited disposition by special motion to strike.  In holding that they are not, we do not foreclose another pretrial disposition such as summary judgment.

**DISPOSITION**

The order appealed from is affirmed.

---

[12]  *Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127;*Mine Workers v. Pennington* (1965) 381 U.S. 657.

23

_____

RUSHING, P.J.

WE CONCUR:

_____

ELIA, J.

_____

MÁRQUEZ, J.

Trial Court:                                      Santa Clara County Superior Court
                                                  Superior Court No.:  CV203288


Trial Judge:                                      The Honorable
                                                  Peter H. Kirwan


Attorneys for Defendant and Appellant             The Boccardo Law Firm Inc.
The Boccardo Law Firm Inc.:                       John C. Stein

                                                  Linda S. Votaw


Attorneys for Plaintiff and Respondent            Branson, Brinkop, Griffith & Strong
Old Republic Construction Program Group:          Kenneth W. Sandall

                                                  Branson, Brinkip, Griffith & Campo
                                                  Kenneth W. Sandall

25