Filed 6/13/16  CBRE, Inc. v. Mission Viejo Gateway, Inc. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| CBRE, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MISSION VIEJO GATEWAY, INC. et al., <br><br> Defendants and Appellants. | B255934 <br><br> (Los Angeles County <br> Super. Ct. No. BC527732) |

APPEAL from an order of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

Gieleghem Law Office and Neil Gieleghem for Defendants and Appellants.

Hamburg, Karic, Edwards & Martin, Steven S. Karic, Gregg A. Martin and David A. Householder for Plaintiff and Respondent.

_____

## INTRODUCTION

CBRE, Inc. filed a complaint against Mission Viejo Gateway, Inc., and its three shareholders Hormoz Faryab, Mehrdad Farzinpour and Sam Gilani (collectively MVG), asserting causes of action for breach of contract and indemnity arising out of a sale of commercial property for which CBRE served as MVG's real estate broker.  MVG entered into an agreement to sell the property to Buy Buy Baby, Inc. (BBB) and then repudiated the contract, resulting in a series of litigation—BBB filed two federal actions against MVG for repudiating the sales contract; and MVG filed a state action against its former attorney for malpractice in handling the BBB transaction.  MVG ended up selling the property to BBB to resolve the federal actions and obtaining a partial award in its malpractice action; and CBRE ended up without a commission and enmeshed in the federal and state litigation.  CBRE brought this case against MVG, alleging that it is entitled to its commission pursuant to the parties' contract and that it is entitled to recover its litigation expenses based on contractual and equitable principles of indemnity.

Though this case would appear to present a run-of-the-mill commercial dispute, MVG filed a special motion to strike under the anti-SLAPP statute,[1] arguing that CBRE's indemnity claims for recovery of its litigation expenses in the malpractice action arose from MVG's protected activity in filing that lawsuit.  The trial court denied the motion, concluding that the obligation to pay commission and indemnify CBRE arose from the parties' contractual relationship rather than from any protected activity engaged in by MVG.  Because we agree that none of the challenged causes of action arises from protected activity, we affirm.

---

[1]     "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 815, fn. 1.)  The anti-SLAPP law is found in section 425.16 of the Code of Civil Procedure.  All further statutory references are to the Code of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      CBRE'S COMPLAINT AGAINST MVG**

 1.      *The Commission Agreement Between MVG and CBRE*

In December 2010, MVG and CBRE entered into a written contract for payment of a commission for providing real estate brokerage services in connection with the sale of commercial property owned by MVG in Mission Viejo, California. The agreement states in part: "Seller agrees to pay Seller's Broker a commission of one and one-half percent (1.5%) on the gross sales price. Gross sales price shall include any and all consideration received or receivable, in whatever form, including but not limited to assumption or release of existing liabilities. The commission shall be due and payable at the close of escrow through escrow . . . ." The agreement also contains a provision for attorneys' fees to the prevailing party in any action to enforce the contract.

 2.      *The Repudiation of the Sales Contract Between MVG and BBB*

In January 2011, MVG entered into an agreement with BBB to sell the Mission Viejo property for $7.9 million. The sale was scheduled to close in early March 2011, but MVG repudiated the agreement. Two separate sets of lawsuits were filed following the repudiation: BBB and others sued MVG in federal court in two actions (the Federal Actions); and MVG sued its former attorney, Philip Metson, in state court for malpractice in representing MVG in the sale of the property (the Metson Action).[2] CBRE became entangled in these lawsuits and incurred expenses.

---

[2]     At the time of the repudiation, MVG had an outstanding loan on the property. MVG purportedly repudiated the agreement with BBB because a sale would have triggered a pre-payment penalty provision in MVG's contract with its lender that would eliminate MVG's anticipated profits on the sale. MVG subsequently filed the Metson Action, claiming that its former attorney failed to draft a provision in the sales agreement to require BBB to assume the loan or the costs of the pre-payment penalty.

3

### a. The Federal Actions

After MVG repudiated the sales contract, BBB and others filed the Federal Actions in Los Angeles. In March 2012, MVG attempted to join CBRE as a party to those lawsuits. "While that attempt was unsuccessful, CBRE nevertheless incurred in excess of $28,000 in attorney fees and costs in connection with the Federal Actions."

In May 2012, the parties settled the Federal Actions. As part of the settlement, MVG agreed to sell the Mission Viejo property to BBB for approximately $9 million. The settlement agreement provided that the only real estate broker to be paid a sales commission was BBB's broker. Consequently, CBRE never received the commission due under its agreement with MVG.

### b. The Metson Action

After settling the Federal Actions, MVG sued Metson in Los Angeles Superior Court, alleging that Metson engaged in malpractice when representing MVG in the sale of the Mission Viejo property. In response, Metson filed a cross-complaint against CBRE for indemnity, contribution, and declaratory relief. This cross-complaint was severed before trial.

The Metson Action proceeded to trial on MVG's complaint. A jury rendered a verdict awarding damages to MVG apportioned by percentage of fault. The jury found that MVG was primarily responsible for the damages (apportioning 65 percent of the damages to MVG and 35 percent of the damages to Metson). The trial court entered judgment on the verdict in July 2013, and Metson eventually dismissed his cross-complaint against CBRE in October 2013. Still, CBRE incurred more than $117,000 in attorneys' fees in connection with the case.

### 3. *The Causes of Action Brought in this Case*

Based on the above allegations, CBRE asserted seven causes of action against MVG for (1) breach of contract, (2) conversion, (3) fraudulent conveyance, (4) money had and received, (5) quantum meruit, (6) implied contractual indemnity, and (7) equitable indemnity. The only causes of action at issue on appeal are the first, sixth, and seventh (breach of contract, implied contractual indemnity, and equitable indemnity,

4

respectively), which seek recovery not only of CBRE's commission but also of its litigation expenses. The other causes of action seek recovery solely of the commission under various legal theories and are not at issue on appeal.[3]

In its first cause of action for breach of contract, CBRE alleged that MVG breached the commission agreement and its implied covenant of good faith and fair dealing by failing to pay the commission owed for the sale of the Mission Viejo property. This breach caused CBRE to sustain damages exceeding $280,000, plus prejudgment interest, attorneys' fees and costs, comprised of: $135,000 in commission (1.5 percent of the $9 million sales price); $28,000 in litigation expenses in the Federal Actions; and $117,000 in litigation expenses in the Metson Action. CBRE also alleged that it was entitled to recover attorneys' fees and costs in this action.

In its sixth cause of action for implied contractual indemnity, CBRE alleged that the commission agreement created a reciprocal right to indemnity against the other party's wrongdoing. Under the agreement, CBRE expressly agreed to "indemnify, hold harmless and defend" MVG for any claims against it resulting from CBRE's "misconduct, breach, default, omission or violation." According to CBRE, this unilateral indemnification provision is effectively a bilateral provision through implied contract principles. MVG's "obligation to indemnify CBRE arises from equitable considerations of the contractual language whereby CBRE agreed to indemnify [MVG] for its own errors and omissions. Implied in such contract is a concomitant duty that [MVG] should indemnify and hold CBRE harmless for any of [MVG's] own acts of negligence and misfeasance that cause CBRE financial harm." MVG's breach of its contractual obligations foreseeably resulted in CBRE's having to incur expenses in the Federal Actions and Metson Action.

---

[3] After MVG filed its special motion to strike, CBRE filed a first amended complaint to address defects raised in a separate demurrer MVG had filed. CBRE concedes that the amended complaint did not moot or otherwise affect the special motion to strike. (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1280 [a party may not avoid an anti-SLAPP challenge by subsequently amending the challenged pleading].)

In its seventh cause of action for equitable indemnity, CBRE alleged that it was entitled to recover its litigation expenses in the Federal Actions and Metson Action pursuant to equitable principles. CBRE alleged: "Equitable indemnification applies in cases in which one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party. As a result of [MVG's] above described conduct, and through no fault or wrongdoing of CBRE, CBRE has been required to incur" litigation expenses. "In this situation, equity requires that [MVG] indemnify CBRE for its attorney fees in an amount exceeding $28,000 in the Federal Actions and more than $116,000 in the Metson Action."[4]

## B. MVG'S SPECIAL MOTION TO STRIKE

MVG filed a special motion to strike these three causes of action from CBRE's complaint, arguing that CBRE was suing MVG for having filed the Metson Action, which is a constitutionally protected activity within the meaning of the anti-SLAPP statute (§ 425.16).

---

[4] CBRE expands on the theory behind each of its indemnity claims in its response brief. The implied contractual indemnity claim in the sixth cause of action is based on the "agent-principal relationship" created by the commission agreement. In support of this theory, CBRE cites *Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.* (2007) 148 Cal.App.4th 937, 968, 972, which states that "a duty to indemnify has been implied from the obligation of the contracting parties to perform their promises . . . properly" (which MVG violated by repudiating the sales contract). CBRE relies on this same theory in seeking defense costs in the first cause of action. The equitable indemnity claim in the seventh cause of action is based on the "tort of another" theory—i.e., the principle that "[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." (*Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620.) In considering whether the challenged causes of action arise from protected activity, we do not evaluate the merits of the claims. (*Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, 1520 ["'"'The court reviews the parties' pleadings, declarations and other supporting documents to determine what conduct is actually being challenged, not to determine whether the conduct is actionable"'"'].)

The trial court denied the motion in its entirety. In its statement of decision, the trial court found the "gravamen" of the breach of contract cause of action to be CBRE's alleged entitlement to a commission under its agreement with MVG, a "purely private dispute . . . [that] is not based upon protected activity." As for "[t]he request for attorney fees arising from other litigation," the court found that to be "only incidental to the breach of contract claim." The court explained: "[MVG] argued (without supporting authority) that the court should consider the dollar amount of damages requested by [CBRE] in attorney fees [in] determining the principal thrust of the cause of action. The court has rejected this argument. It is [MVG's] *conduct* underlying [CBRE's] cause of action that the court considers in determining whether [MVG's] claims are based upon protected activity."

The court also found that the indemnity claims asserted in the sixth and seventh causes of actions were not subject to the anti-SLAPP statute. The court reasoned: "The gravamen of [CBRE's] claims in the sixth and seventh causes of action is that [MVG] failed to indemnify [CBRE] in the Metson [A]ction when [CBRE] was named in the cross-complaint. This claim is based on the contractual relationship between the parties (agent/principal) and is not based upon any petitioning activity by [MVG]. [MVG] assert that their filing of the legal malpractice action against attorney Metson is petitioning activity that satisfies the first prong [of the anti-SLAPP statute]. The court disagrees. If the court were to accept [MVG's] argument, then virtually every complaint for indemnity would be subject to an anti-SLAPP motion. This is because almost every claim for indemnity is likely to have its origins in some litigation or threatened litigation. The determination as to whether a party is entitled to indemnification from another party is not the protected activity contemplated by the anti-SLAPP law. In this case, it is a private matter based upon the contractual relationship between the parties."

Thus, the trial court concluded that MVG had failed to satisfy its initial burden to show CBRE was bringing the challenged causes of action based on petitioning activity protected under the anti-SLAPP statute and denied the motion.

7

**C.     THE SCOPE OF THE CHALLENGE TO THE INDEMNITY CLAIMS ON APPEAL**

CBRE alleged that it is entitled to be indemnified for expenses incurred in both the Federal Actions ($28,000) and the Metson Action ($117,000).  On appeal, MVG focuses its analysis almost exclusively on the Metson Action, claiming that its filing of that lawsuit is protected activity warranting relief under the anti-SLAPP statute.  In contrast, MVG devotes scant attention to the indemnity claims related to the Federal Actions, failing to address how those actions, filed by BBB and others, arose from any protected activity by MVG.  We therefore conclude that the challenge to the indemnity claims related to the Federal Actions has been forfeited and confine our discussion to the challenge to the indemnity claims in the Metson Action.  (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457 [failure to present any legal authority or analysis in support of a claim of error results in forfeiture].)

## DISCUSSION

**A.     THE ANTI-SLAPP STATUTE**

To obtain relief under the anti-SLAPP statute, a defendant must first establish that the challenged claim "aris[es] from any act of that [defendant] in furtherance of the [defendant's constitutional] right of petition or free speech . . . in connection with a public issue . . . ."  (§ 425.16, subd. (b)(1).)  If the defendant satisfies this threshold showing, the burden shifts to the plaintiff to establish a probability of prevailing on that claim.  (*Ibid*.; accord, *Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.)

The question in this case is whether MVG has satisfied the threshold showing—that is, whether MVG has demonstrated that the three challenged causes of action arise from an act taken by MVG in furtherance of its right of petition or free speech.  The anti-SLAPP statute defines a protected act to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral

statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

The trial court concluded that MVG did not satisfy the threshold showing. We review the trial court's denial of the anti-SLAPP motion de novo. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055.) Because we agree with the trial court's conclusion, we need not and do not analyze the merits of CBRE's claims for purposes of deciding whether it has demonstrated a probability of prevailing. (*Olive Properties, L.P. v. Coolwaters Enterprises, Inc.* (2015) 241 Cal.App.4th 1169, 1176 [burden never shifted to nonmoving party to show probability of prevailing because moving party failed to show the complaint arose from protected activity].)

## B.    MVG HAS NOT CROSSED THE ANTI-SLAPP THRESHOLD

MVG concedes that CBRE's claim for commission owed under the parties' contract is outside the reach of the anti-SLAPP statute. Instead, MVG challenges CBRE's claim for indemnity for the expenses incurred in defending the cross-complaint in the Metson Action. MVG contends that the indemnity claim—asserted in the breach of contract cause of action (in part)[5] and in the implied contractual and equitable indemnity causes of action (in whole)—trigger the protections of the anti-SLAPP statute because it is based on its petitioning activity in suing its former attorney. This contention misconstrues the scope of that statute.

"[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context,

---

5    MVG contends that the first cause of action for breach of contract presents a mixed cause of action, combining an admittedly nonprotected claim for commission with a purportedly protected claim for indemnity. Because we find that the indemnity claim does not arise from protected activity (as explained below), we do not consider the first cause of action to be mixed.

9

the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citation.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) In addressing this question, a court looks to the gravamen of the claim (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477), focusing on the allegedly wrongful, injurious acts to determine if those acts constitute protected activity (*Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 868).

Contrary to MVG's argument, the wrongful act asserted in the challenged causes of action is not the filing of the Metson Action (protected activity), but the alleged breach of MVG's obligation to indemnify CBRE for the expenses incurred in that lawsuit (nonprotected activity). While the filing of a lawsuit is an exercise of the constitutional right of petition (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90), CBRE did not sue MVG for having filed its legal malpractice action against its former attorney. That is, CBRE did not allege that the filing of that action constituted wrongful conduct; instead, it alleged that MVG breached its legal duty to reimburse CBRE for the costs it incurred after Metson brought it into the action. Thus, the indemnity claims do not arise from protected activity. (See *Drell v.Cohen* (2014) 232 Cal.App.4th 24, 30 [declaratory relief action to determine the status of an attorney fee lien "did not allege [the] defendants engaged in wrongdoing by asserting their lien," but rather "asked the court to declare the parties' respective rights to attorney fees"]; *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.*, *supra*, 230 Cal.App.4th at p. 869 [claims for breaching litigation stipulation arose from the nonprotected act of removing the funds from a blocked account in breach of the stipulation, and not from the protected act of entering into the stipulation]; *Renewable Resources Coalition, Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, 396-397 [action against the defendants for unlawfully obtaining confidential documents used to file a complaint against the plaintiff for election law violations arose from the unprotected act of unlawfully obtaining confidential documents, and not from the protected act of filing a complaint against the plaintiff].)

10

In arguing to the contrary, MVG seeks to equate the specific anti-SLAPP concept of "arising from" with the broad causation concept of "but for." According to MVG, "[t]he specific gravamen of the challenged [c]auses of [a]ction . . . is not material to the SLAPP analysis" because the "determining factor is whether the claim . . . arises out of constitutionally protected First Amendment activity, e.g., a lawsuit such as the Metson Action." This argument not only contradicts the rule requiring an analysis of the gravamen of the challenged causes of action (*Episcopal Church Cases*, *supra*, 45 Cal.4th at p. 477), but also overlooks the principle that a cause of action does not arise from protected activity merely because it "may have been 'triggered' by protected activity" (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89).[6]

Indeed, courts have rejected similar attempts to invoke the protections of the anti-SLAPP statute simply because a lawsuit "trigger[ed] the chain of events that caused" a plaintiff to file a claim. (*State Farm General Ins. Co. v. Majorino* (2002) 99 Cal.App.4th 974, 977.) In *Majorino*, State Farm's insureds were sued for assault by third parties. State Farm brought a declaratory relief action against its insureds and the third parties to determine if it had a duty to indemnify the insureds for liability resulting from the alleged assault. The third parties filed an anti-SLAPP motion, arguing that State Farm's claim arose from the personal injury action they had filed against State Farm's insureds. (*Id.* at p. 976.) The court rejected the argument, reasoning: "[The third parties'] personal injury suit against [State Farm's insureds] did trigger the chain of events that caused State Farm

---

[6]    MVG states that "the SLAPP [l]aw has been held to apply to claims styled as 'equitable indemnity,'" citing *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153. In *Faigin*, however, the equitable indemnity claim arose from protected statements the plaintiff made to a state regulator about alleged wrongdoing by the plaintiff's former employer. Those statements prompted the state regulator to file an action against the former employer. (*Id*. at pp. 1166-1167.) The former employer sought equitable indemnity by alleging that its former employee wrongfully communicated with the state regulator (protected activity), which then resulted in regulatory action. (*Id*. at p.1177.) Here, CBRE seeks indemnity by alleging that MVG wrongfully repudiated the sales contract with BBB (nonprotected activity), which then resulted in litigation.

to seek a judicial declaration of its coverage obligations.  And the nature of the claims in the underlying personal injury case frames the scope of coverage under the State Farm policy.  But the action for declaratory relief *arose* from the tender of defense and the terms of an insurance policy issued well before the underlying litigation commenced, not from the litigation process itself.  [Citation.]"  (*Id.* at p. 977; accord, *Olive Properties, L.P. v. Coolwaters Enterprises, Inc.*, *supra*, 241 Cal.App.4th at p. 1175 [no relief warranted under the anti-SLAPP statute merely because tenant's prior lawsuit "arguably 'triggered' the unlawful detainer complaint"].)

Accordingly, the trial court properly denied the special motion to strike in its entirety because none of the challenged causes of action arose from protected activity within the meaning of the anti-SLAPP statute.

## DISPOSITION

The order denying the special motion to strike is affirmed.  CBRE is to recover its costs on appeal.


BLUMENFELD, J.[*]


We concur:


PERLUSS, P. J.


ZELON, J.

_____

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12