Filed 1/27/21  Storix, Inc. v. Johnson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| STORIX, INC.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY JOHNSON,<br><br>    Defendant and Appellant;<br>------------------------------------------------------------<br>ANTHONY JOHNSON,<br><br>    Cross-complainant and Appellant,<br><br>    v.<br><br>DAVID HUFFMAN et al.,<br><br>    Cross-defendants, and Respondents; | D075308<br><br>(Super. Ct. No.<br>37-2015-00028262-CU-BT-CTL<br>Consolidated under lead case<br>Super. Ct. No.<br>37-2015-00034545-CU-BC-CTL) |
| ANTHONY JOHNSON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DAVID HUFFMAN et al.,<br><br>    Defendants and Respondents. | D077096<br><br>(Super. Ct. No. 37-2019-00002457-CU-BT-CTL)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on December 31, 2020 be modified as follows:

On page 14, insert the following at the end of footnote 6:

Johnson argues that the latter part of section 307(b) applies because no court ever found that "ratifying the lawsuit [two] years after it was filed was just and reasonable to Storix." The jury's verdict in favor of Storix and the subsequent judgment establish that Storix's action against Johnson was just and reasonable to Storix.

On page 23, remove the last paragraph and replace it with the following paragraph:

" 'Compliance with the requirements for filing a notice of appeal is mandatory and jurisdictional,' and an appellate court therefore must dismiss an appeal that is untimely." (*Starpoint Properties, LLC v. Namvar* (2011) 201 Cal.App.4th 1101, 1107.) "An order granting or denying a special motion to strike shall be appealable under [Code of Civil Procedure] Section 904.1." (Code Civ. Proc., § 425.16, subd. (i).)  Code of Civil Procedure section 904.1 similarly provides that "[a]n appeal . . . may be taken . . . [f]rom an order granting or denying a special motion to strike under [Code of Civil Procedure] Section 425.16." (Code Civ. Proc., § 904.1, subd. (a)(13); *Reyes v. Kruger* (2020) 55 Cal.App.5th 58, 67 [grant]; *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 906 [same]; *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1317 [denial].)  An appeal also lies if the trial court denies the motion as to some causes of action, for example where the complaint contains claims arising from both protected and unprotected activity.  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381-382, 394; *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 866, fn. 4.)  Additionally, an attorney fees and costs award to a prevailing defendant on an anti-SLAPP motion is directly appealable.  (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 782.)

On page 32 remove the second full paragraph, replace it with the following paragraph and add new footnote 13 as indicated:

Johnson cited no authority in his opening brief to support giving the disputed paragraph.  In his reply brief, Johnson cited out-of-state authority to support instructing with the disputed

2

paragraph.  Out-of-state authority is not binding on California courts.  (*Doe v. Occidental College* (2019) 37 Cal.App.5th 1003, 1018, fn. 2.)  Additionally, the cases cited by Johnson during his rebuttal oral argument (*Neider v. Dardi* (1955) 130 Cal.App.2d 646 (*Neider*) and *Brown v. Allied Corrugated Box Co.* (1979) 91 Cal.App.3d 477 (*Brown*)) do not assist him because these cases do not relate to this issue.  [Insert new footnote 13]  In any event, we are not convinced that removal of the disputed paragraph prejudiced Johnson.

Text of new footnote 13:

  *Neider, supra,*130 Cal.App.2d 646 concerns the appointment of a receiver arising from a conflict between two joint venturers and a corporation.  (*Id.* at p. 647.)  *Brown, supra,* 91 Cal.App.3d 477 concerns an action by minority shareholders in a closely held corporation to involuntarily dissolve the corporation and an appraisal requested by the majority shareholders to ascertain the value of the minority shares.  (*Id.* at pp. 479-480.)  While these cases contain language that arguably supports Johnson's position (*Neider* at p. 649; *Brown* at p. 487), neither case stands for the proposition that majority shareholders may breach their fiduciary duties by denying the minority shareholder a position with the company.  (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043 [a case does not stand for a proposition it does not address].)

On page 36, renumber existing footnote 13 to footnote 14.
  There is no change in judgment.
  The petition for rehearing filed by Anthony Johnson is denied.


             HALLER, Acting P. J.


Copies to:  All parties

Filed 12/31/20  Storix v. Johnson CA4/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STORIX, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ANTHONY JOHNSON, <br><br> Defendant and Appellant; <br><br>---<br><br> ANTHONY JOHNSON, <br><br> Cross-complainant and Appellant, <br><br> v. <br><br> DAVID HUFFMAN et al., <br><br> Cross-defendants, and Respondents; | D075308 <br><br> (Super. Ct. No. 37-2015-00028262-CU-BT-CTL Consolidated under lead case Super. Ct. No. 37-2015-00034545-CU-BC-CTL) |
| ANTHONY JOHNSON, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DAVID HUFFMAN et al., <br><br> Defendants and Respondents. | D077096 <br><br> (Super. Ct. No. 37-2019-00002457-CU-BT-CTL) |

CONSOLIDATED APPEALS from a judgment and orders of the Superior Court of San Diego County, Kevin A. Enright and Katherine A. Bacal, Judges. Affirmed.

Anthony Johnson, in pro. per. for Defendant, Cross-complainant, Plaintiff, and Appellant.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall, Paul A. Tyrell and Sean M. Sullivan for Plaintiff and Respondent, Storix, Inc.

Wilson, Elser, Moskowitz, Edelman & Dicker and Marty B. Ready for Cross-defendants, Defendants, and Respondents David Huffman, Richard Turner, Manuel Altamirano, David Kinney and David Smiljkovich.


These consolidated appeals arise from business disputes between Storix, Inc., a software company, and its founder Anthony Johnson. The disputes resulted in several different lawsuits, three of which are before us in this proceeding.

First, after Johnson started a new company, Storix sued Johnson for breach of fiduciary duty, and Johnson cross-complained against certain Storix officers and directors, alleging breach of fiduciary duty and other claims. This lawsuit will be referred to as the fiduciary duty action. Second, Johnson and another individual filed a shareholders' derivative lawsuit on Storix's behalf against the same officers and directors. This lawsuit will be referred to as the derivative action.

Those two lawsuits (the fiduciary duty and derivative actions) were consolidated. A jury trial was held first on the fiduciary duty action, and the jury returned verdicts in favor of Storix on the complaint and in favor of the defendants on the cross-complaint. The court (Judge Enright) then held a bench trial on the derivative action, and found the action lacked merit. The

2

court entered a single final judgment, and later entered a postjudgment order awarding costs and fees to Storix and certain Storix directors.

In the third lawsuit, Johnson filed an action against certain Storix directors, alleging malicious prosecution and other torts (the malicious prosecution action). These defendants filed an anti-SLAPP motion, but Johnson dismissed his complaint before the motion was heard. The court (Judge Bacal) then entered an order awarding $12,237.50 in attorney fees and $2,364.45 in costs to defendants under the anti-SLAPP statute.

Johnson filed two appeals. In the first, he challenges the final judgment in the fiduciary duty and derivative consolidated actions. Johnson contends the court erred in each of those actions, and in its postjudgment orders. In his second appeal, Johnson challenges the court's attorney fees order in the malicious prosecution action. We consolidated these appeals.

After carefully reviewing the parties' briefs, record, and applicable law, we determine Johnson has not met his burden to show prejudicial error in either appeal. We thus affirm the challenged judgment and orders.

FACTUAL AND PROCEDURAL SUMMARY[1]

*Background*

Storix develops and sells a software product called System Backup Administrator (SBAdmin). Johnson founded Storix in 1998 as a sole proprietor and incorporated the company in 2003. He was Storix's only shareholder until 2010.

---

[1] We grant Johnson's August 12, 2019 unopposed judicial notice request concerning his motion to strike or tax costs. We grant Storix's November 12, 2019 unopposed judicial notice request concerning two federal court opinions in related proceedings. (Evid. Code, §§ 459, subd. (a), 452, subd. (d).)

3

In 2011, Johnson resigned as an officer and director of Storix after being diagnosed with a serious health condition. He transferred management and operational responsibilities to then-employees David Huffman, Richard Turner, Manuel Altamirano and David Kinney. Johnson also caused Storix to grant these individuals shares amounting to a combined 60 percent stake in Storix, in exchange for their agreement to stay with the company for two years. Johnson retained the other 40 percent of Storix shares. Johnson elected Huffman, Turner, Altamirano and Kinney to Storix's board of directors and elected Huffman as Storix's president. In 2012, Storix hired David Smiljkovich as its chief financial officer (CFO). We collectively refer to Smiljkovich, Huffman, Turner, Altamirano and Kinney as the Individual Defendants.

ln 2013, Johnson's health crisis resolved and he began working as a Storix employee. In May 2014, Johnson resigned his employment at Storix citing a lack of opportunity and disagreement with the company's vision regarding the software.

Three months later, Johnson filed a copyright infringement action in federal court against Storix. While the copyright infringement matter was pending, Johnson and fellow shareholder, Robin Sassi, were elected to Storix's board. At that time, Storix had five board members consisting of Johnson, Sassi, and three of the Individual Defendants (Huffman, Turner, and Altamirano). The day after this election, Johnson incorporated Janstor Technology (Janstor), a company that intended to sell a product based on the SBAdmin source code. Johnson believed the Individual Defendants were going to ruin Storix and decided to "rebrand[]" software he had been working on at home. Johnson denied forming Janstor to compete with Storix.

4

*Filing of Fiduciary Duty and Derivative Actions*

In August 2015, Storix filed the fiduciary duty action against Johnson and Janstor. Storix alleged Johnson breached his fiduciary duties by forming Janstor to compete with Storix.

The following month, on September 26, Johnson sent an email to Storix's management and employees entitled "Buckle Up Boys!," threatening to send an email to Storix's customers informing them of mismanagement at Storix. Johnson demanded the other Storix shareholders give up their ownership interests, resign their board positions and end their employment, saying this was the only way to save the jobs of Storix employees. Within two weeks, Johnson sent an email to Storix's customers (the customer email) informing them of the pending copyright litigation and asking them to stop paying Storix for the software. We discuss this email in detail in Discussion, Part II.A.3.

After Johnson sent the customer email, Storix amended its fiduciary duty complaint to allege Johnson breached his fiduciary duties by sending the email because it allegedly tarnished Storix's reputation. Storix later added an allegation that Johnson breached his fiduciary duties by stealing a copy of Storix's source code to create a competing product. Storix claimed $1.2 million in damages based on the "unfair head start" Johnson obtained by wrongfully using Storix's source code to create a competing product. Storix also asserted damages based on the expenses it incurred to protect its customer relationships after Johnson sent the customer email.

Johnson cross-complained against the Individual Defendants alleging claims for breach of fiduciary duty, fraud, and conspiracy. Johnson claimed these defendants breached fiduciary duties owed to him by, among other things, using their majority control of Storix to oust him from the company,

5

acting in concert to file suit in Storix's name without Storix's approval to economically harm him, and by denying him a position with the company.

In response, the Individual Defendants filed an anti-SLAPP motion to strike Johnson's entire cross-complaint. The court granted the motion in part and struck certain allegations. The court issued an order granting the Individual Defendants' attorney fees and costs incurred on the motion.[2]

In October 2015, Johnson and Sassi filed the derivative action purportedly on Storix's behalf against the Individual Defendants, asserting causes of action for breach of fiduciary duty, abuse of control, corporate waste, and accounting. Johnson and Sassi alleged these defendants breached fiduciary duties owed to Storix by, among other things, neglecting the software after taking control of the company, acting to promote their financial self-interest at Storix's expense, and failing to adhere to corporate formalities.

In December 2015, a jury in Johnson's federal copyright infringement action found in Storix's favor on the infringement claim.[3]

*Trial Proceedings in Fiduciary Duty and Derivative Actions*

Meanwhile, in the superior court, the fiduciary duty action (complaint and cross-complaint) and the derivative action were consolidated. In pretrial rulings relevant to this appeal, the trial court (1) precluded Johnson from testifying as an expert witness on corporate governance issues; (2) precluded Johnson from presenting evidence *at the jury trial on Johnson's cross-*

---

[2] As we will discuss, Johnson did not timely appeal from these orders.

[3] The district court awarded Storix attorney fees and costs under the Copyright Act, finding Johnson's "motives were not merely to secure a copyright infringement judgment, but also to wrest control of the company from its majority shareholders and to force the company to 'close its doors.'"

6

*complaint* about any claimed damages that impacted all Storix shareholders equally; (3) rejected Johnson's argument the customer email was protected by the litigation privilege; (4) denied Johnson's request to exclude the customer email from evidence; and (5) reserved ruling on the Individual Defendants' motion challenging Johnson and Sassi's standing to file the derivative action on Storix's behalf.

The court first held the jury trial in the fiduciary breach action. After a 10-day trial with 13 witnesses and an exhibit list identifying 902 exhibits, the jury returned a verdict in Storix's favor on its breach of fiduciary duty claim and found Storix suffered $3,739.14 in damages. The jury rejected Storix's argument it had incurred damages of approximately $1.2 million for Johnson's act of using Storix's source code to create a competing product. The jury also found in favor of the Individual Defendants on all causes of actions in Johnson's cross-complaint.[4]

At the later bench trial on the derivative action, the court dismissed Johnson for lack of standing, finding he was an inadequate shareholder derivative plaintiff based on the jury's verdict against him. The bench trial proceeded with Sassi as the sole plaintiff. The court then found in favor of the Individual Defendants on all causes of action in the derivative action. The court denied Johnson's motion to release his shareholder-plaintiff's bond.

The court then entered a consolidated judgment, reflecting the findings in favor of Storix and the Individual Defendants. The court later awarded costs and fees to these parties for prevailing in the actions.

---

[4]     Storix obtained a default judgment against Janstor.

*Malicious Prosecution Action*

Soon after, Johnson filed the malicious prosecution action against the Individual Defendants (except for CFO Smiljkovich), alleging malicious prosecution and other torts. These defendants filed an anti-SLAPP motion to strike this complaint. Before the court ruled on the motion, Johnson dismissed his complaint without prejudice. The court then awarded $12,237.50 in attorney fees and $2,364.45 in costs to the defendants.

DISCUSSION

I. *General Legal Principles Governing Appeals*

On appeal, we evaluate factual findings under the substantial evidence standard. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.) Conflicts in the evidence must be resolved in favor of the judgment and if two or more inferences can be reasonably drawn from the facts, the reviewing court must accept the inferences deduced by the trial court. (*Green v. Board of Dental Examiners* (1996) 47 Cal.App.4th 786, 796.) We review the court's legal determinations independently under the de novo standard. (*Ibid.*)

A judgment is presumed correct, all presumptions are indulged to support it on matters as to which the record is silent, and an appellant must affirmatively demonstrate error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Although Johnson is representing himself in this litigation, appellate rules apply with equal force to self-represented parties. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.) A litigant "appearing in propria persona, . . . is entitled to the same, but no greater, consideration than other litigants and attorneys." (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638.)

"Appellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we

treat the point as waived.' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.) "We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

Mindful of these rules, we consider Johnson's appellate contentions challenging the court's rulings on (1) the fiduciary duty action (complaint and cross-complaint); (2) the derivative action; (3) the cost and attorney fees orders pertaining to the consolidated final judgment; and (4) the attorney fees order on the malicious prosecution action.

## II. *Fiduciary Duty Action*

### A. *Storix's Breach of Fiduciary Duty Claims Against Johnson*

Johnson contends the judgment against him for breach of fiduciary duty must be reversed for several reasons. First, he contends Storix lacked standing or the capacity to bring the action against him. Second, Johnson maintains Storix was required to file a shareholders' derivative suit, not a direct action, and that Storix should be judicially estopped from asserting its direct action was valid. Third, Johnson argues the court prejudicially erred by permitting the jury to consider the customer email to support Storix's breach of fiduciary duty claim. Fourth, he challenges the court's denial of his postjudgment motions. We address each of these arguments below.

### 1. *Storix's Standing, Capacity, or Authority to File the Lawsuit*

Johnson contends Storix lacked standing to bring the action. This contention lacks merit.

"Every action must be prosecuted in the name of the real party in interest[.]" (Code Civ. Proc., § 367.) "[S]tanding to sue—the real party in interest requirement—goes to the existence of a cause of action, i.e., whether

9

the plaintiff has a right to relief." (*American Alternative Energy Partners II v. Windridge, Inc.* (1996) 42 Cal.App.4th 551, 559.) "The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439.) "Lack of standing may be raised at any time in the proceeding, including at trial or in an appeal." (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000.)

Under these principles, Storix had legal standing. Storix (as a corporation) allegedly suffered damages from Johnson's breach of fiduciary duties. Thus, it had a right to bring an action to seek relief. (See *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 (*Grosset*); *CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1150.)

Johnson alternatively argues Storix was not a proper plaintiff because it did not have the authority or capacity to file the lawsuit claiming its board never approved the complaint or ratified its filing.

Under California law, a corporation ordinarily has the legal authority or capacity to sue. (Corp. Code, § 207.)[5] "An allegation by a plaintiff that it is a corporation is sufficient to show that it has the general capacity to sue." (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1605.) "[A] plea in abatement such as lack of capacity to sue 'must be raised by defendant at the earliest opportunity or it is waived. . . . The proper time to raise a plea in abatement is in the original answer or by demurrer at the time of the answer.' " (*Id.* at p. 1604.)

---

[5]      Undesignated statutory references are to the Corporations Code.

Storix initially contends Johnson waived his legal-capacity challenge by failing to assert it as an affirmative defense in his answer. We reject this argument. The record reflects that throughout the litigation, Johnson challenged Storix's capacity to sue, including in a demurrer, summary judgment motion, and at trial.

But we agree with Storix that Johnson's challenge is unsupported on its merits. "It is well settled that a corporation may sue upon authorization of its board of directors or upon the initiative of its president or managing officer." (*American Center for Education, Inc. v. Cavnar* (1978) 80 Cal.App.3d 476, 498, superseded by statute on other ground as stated in *Patton v. Sherwood* (2007) 152 Cal.App.4th 339, 346; accord *Grosset, supra,* 42 Cal.4th at p. 1108.) Additionally, a corporation has an inherent right to sue without the board adopting a resolution specifically authorizing the action. (*Canal Oil Co. v. National Oil Co.* (1937) 19 Cal.App.2d 524, 537.) The validity of corporate acts generally constitute questions of law, "but the answers to such questions may, of course, involve factual issues." (*American Center*, at p. 485, fn. 3.)

When Storix filed its action against Johnson, its board was comprised of Huffman, Turner, Altamirano, Johnson and Sassi. Sassi was Johnson's coplaintiff in the derivative action and Johnson described her as his best friend. Storix's bylaws provided that, subject to the board's control, the president has general supervision, direction, and control of the corporation's business. Additionally, corporate officers are considered agents of the corporate entity in their dealings with third persons. The corporation is bound by such dealings, if they were "within the scope of the authority, actual or apparent, conferred by the board or within the agency power of the officer executing it. . . ." (§ 208, subd. (b).)

11

At trial, Huffman, Storix's president and chief executive officer, testified Storix was a small company that operated without much formality. For example, he noted that three board members voted to approve his salary increase, but no noticed board meeting occurred, nor were minutes created. He described the action as the three board members being in the office together, talking, and then voting. Huffman testified he approved filing the action against Johnson after discussing it with Turner and Altamirano, but admitted the discussion did not occur at a recognized board meeting.

Both Turner and Altamirano confirmed they reviewed the complaint against Johnson and consented to its filing. Huffman and Turner explained it was pointless to discuss the issue with Johnson and Sassi, the remaining two board members, because the decision to file the action was against Johnson. Turner's and Altamirano's knowledge of the proposed complaint against Johnson evidenced Huffman's capacity to institute the litigation on Storix's behalf.

Moreover, Johnson's cross-complaint alleged Storix was a closely held corporation. Status as a close corporation allows the participants to act "akin to a partnership in its informality." (*Hecht v. Superior Court* (1987) 192 Cal.App.3d 560, 565; see § 158, subd. (a).) Critically, shareholders of a statutory close corporation can bypass the board of directors or "dispense with the board of directors entirely and authorize the shareholders themselves to adopt bylaws, elect officers and do whatever else directors do." (Friedman et al., Cal. Practice Guide: Corporations (The Rutter Group 2020) ¶ 3:249, p. 3-57, citing § 300, subd. (b).)

Further, even assuming board president Huffman lacked the capacity (without formal board approval) to institute the litigation against Johnson on Storix's behalf, the evidence shows the Storix board later ratified the action

during a special board meeting at which the then-directors (Huffman, Altamirano and Smiljkovich) voted to ratify the earlier decision of Huffman, Altamirano and Turner to file the lawsuit. Sassi and Johnson voted against the ratification.

An action within the authority of a corporate board may be ratified "through a resolution of its board of directors when duly assembled." (*John Paul Lumber Co. v. Agnew* (1954) 125 Cal.App.2d 613, 622.) Absent prejudice to third parties, ratification is retroactive in effect. (Civ. Code, § 2313; *Meyers v. El Tejon Oil & Refining Co.* (1946) 29 Cal.2d 184, 187 (*Meyers*).)

To avoid a ratification finding, Johnson relies on *Dominguez v. Superior Court* (1983) 139 Cal.App.3d 692. In *Dominguez*, the post-filing ratification of a complaint was ineffective because it would have prejudiced a third party by precluding the defendant from asserting a statute of limitations defense and undermined the pertinent statutory scheme. (*Id.* at p. 695.) Such facts do not exist here, nor is the statutory scheme weakened.

Citing section 310, subdivision (a)(2), Johnson maintains that a ratification could occur only without counting the votes of interested directors, thus eliminating Huffman, Altamirano and Smiljkovich because they were defendants in Johnson's derivative action. However, this section applies only to a "transaction between a corporation and one or more of its directors, or between a corporation and any corporation . . . in which one or more of its directors has a material financial interest . . . ." By its language, the section is inapplicable.

Relying on section 307, subdivision (b), Johnson contends any action taken by a board without a meeting requires the written consent of all

13

directors, not just the majority.[6]  Although this provision identifies one way an action may be instituted, it is not exclusive.  As noted, Storix's president had the capacity to file the complaint on Storix's behalf without board approval.  Moreover, to the extent board consent may have been required, the board later ratified Huffman's action and the ratification had retroactive effect.  (*Meyers*, *supra*, 29 Cal.2d at p. 187.)  On these facts, section 307, subdivision (b) does not apply.[7]

In a related argument, Johnson contends the trial court erred by not allowing the jury to decide this factual issue in the special verdict form and by the court making this finding as a matter of law after the jury trial.  However, Johnson did not preserve this challenge because he never objected to the special verdict form and his counsel consented to the form.  The record reflects that during the recorded hearing on the jury instructions and special verdict form, the trial court noted the issue presented a question of law for the court to decide (because it was undisputed that three of five Storix directors voted to proceed with the action), and Johnson's counsel did not object to this conclusion.

---

[6]    Section 307, subdivision (b) provides:  "An action required or permitted to be taken by the board may be taken without a meeting, if all members of the board shall individually or collectively consent in writing to that action and if the number of members of the board serving at the time constitutes a quorum. . . .  [I]n any suit brought to challenge the action, the party asserting the validity of the action shall have the burden of proof in establishing that the action was just and reasonable to the corporation at the time it was approved."

[7]    Because sections 307 and 310 do not apply, the trial court did not err by rejecting Johnson's proposed special jury instruction on whether the lawsuit was unanimously approved in writing by the board, or whether disinterested directors or shareholders approved or ratified the lawsuit at a noticed director's or shareholder's meeting.

## 2. *Storix was Not Required to Bring a Shareholder's Derivative Action*

Johnson next argues Storix's fiduciary duty complaint should have been dismissed because it was not filed as a shareholder's derivative action.

A shareholder's derivative suit was unnecessary because Storix's directors had the right to bring the lawsuit in Storix's name to remedy perceived wrongs against the entire corporation. (See *Grosset, supra,* 42 Cal.4th at p. 1108.) A shareholders' derivative lawsuit is brought *by shareholders* to enforce the corporation's rights when *the managing board "fails or refuses to do so."* (*Ibid.*, italics added.) Here, the corporation brought the action so a derivative action was unnecessary.

Johnson cites *Anmaco, Inc. v. Bohlken* (1993) 13 Cal.App.4th 891 for the proposition that a director is prohibited from instituting litigation in the name of a corporation against a co-director and that the proper vehicle for this suit is a shareholders' derivative action. *Anmaco* is distinguishable because in that case the corporation consisted of only two corporate directors, each a 50 percent shareholder, and the corporate bylaws did not permit one shareholder-director to sue the other in the corporation's name. (*Id.* at pp. 895, 898.) Under these circumstances, the court found one director could not bring an action "where the other shareholder-director could claim equal authority to bring suit in the corporate name." (*Id.* at p. 900.)

The situation here is different. The majority board had the authority to bring a lawsuit to recover for the corporation's damages allegedly caused by one of the shareholders/directors. Storix was authorized to file this action to protect the corporation from Johnson's alleged breaches of fiduciary duty, and no shareholder was *required* to bring a shareholders' derivative lawsuit to make the identical claim.

15

Johnson also asserts the judicial estoppel doctrine precludes Storix from arguing that its action was properly brought in its own name. In support, he notes that the court barred him from relying on evidence of injuries suffered by other shareholders to support his own fiduciary duty claims in his cross-complaint against the Individual Defendants.

Judicial estoppel is " ' "an equitable doctrine invoked by a court at its discretion . . . [and] most commonly applied to bar a party from making a factual assertion in a legal proceeding *which directly contradicts an earlier assertion* made in the same proceeding or a prior one." ' " (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 350, italics added.) The doctrine protects the integrity of the judiciary by preventing fraud on the courts. (*Thomas v. Gordon* (2000) 85 Cal.App.4th 113, 118.)

This doctrine does not apply here because neither Storix nor the Individual Defendants made contradictory assertions *on the same issue.* Storix (the corporation) and Johnson (a shareholder/director/individual) were not similarly situated with respect to their rights to seek redress. Storix brought its claim against Johnson to seek relief for injuries *to the corporation;* whereas Johnson filed his cross-complaint seeking compensation for his own injuries. Moreover, contrary to Johnson's assertions, neither Storix nor the Individual Defendants argued Johnson's entire cross-complaint should have been brought as a derivative action. Rather, defendants argued a portion of Johnson's damages claim did not solely impact Johnson, but impacted all Storix shareholders and was thus more appropriately decided in the derivative action. Johnson's counsel agreed with the general assertion, and

16

so do we. (See *Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 107 (*Jones*).) On this record the concept of judicial estoppel is inapplicable.[8]

### 3. *Customer Email and Application of Litigation Privilege*

Johnson contends the court erred in overruling his objections to the admission of the customer email.

#### a. *Background*

After Johnson filed his copyright infringement action against Storix and Storix filed its action against him, Johnson sent the customer email to Storix customers. The subject matter on the email was "Notice of Copyright Infringement by Storix, Inc." The email began:

> "This letter is to inform you that you may be in possession of unauthorized and infringing copies of [SBAdmin]. I am the author of the software, which is protected by [identifying copyright number], and expert testimony in [the federal copyright action] has indisputably determined that I am the owner, have never transferred, nor received any consideration for its license by Storix.

> "I hold none of Storix' customers or business partners accountable, and you may continue using the current software, even if you received an infringing license after it was revoked. However, I must demand that you cease any further payment to Storix in relation to this software and refrain from downloading any further copies."

The email then identified the Storix directors; discussed Johnson's disputes with these directors, and described the nature and purpose of the pending copyright lawsuit. The email concluded:

---

[8] We note that Johnson has not directed us to any portion of the record where the trial court erroneously prevented him from presenting evidence to support the claims or damages he alleges he personally suffered as a result of respondents' conduct.

"Although a plaintiff in the copyright case, I'm also a 40% shareholder and a director of the company, and am obligated to do everything possible to put an end to this nonsense before the company is lost. I would have preferred the customers and employees remain unaware of this needless battle, but the actions taken by these individuals to protect their majority positions have resulted in the company becoming unprofitable for the first time in its history. They will accept no personal responsibility or compromise, and are now turning to a new employee stock incentive program to cover their losses. This nonsense cannot continue.

"The security enhancements to the software have been completed, along with much more. Unfortunately, far too much damage has been done to me personally and financially to allow these greedy individuals to profit from my work any longer. Many of you I had worked with personally for many years, so it pains me to inform you that support for [SBAdmin] will very likely end when a ruling is made in the copyright case at the end of the month."

Johnson moved in limine to exclude this email, arguing it was directly related to his *copyright action* against Storix and thus should be excluded under the litigation privilege. After considering counsels' arguments, the trial court denied the motion. Before and during defendant Huffman's testimony about this email, Johnson reasserted his objection, but the court overruled the objection and permitted Huffman to testify about the email. The email was introduced as an exhibit at trial.

During closing argument, Storix's counsel supported its breach of fiduciary duty claim by arguing Storix suffered damages of approximately $1.2 million for Johnson's act of using Storix source code to create a competing product and damages between $2,570.86 and $3,739.14 for employee lost productivity in addressing the fallout from the customer email. The jury found Johnson breached his duty of loyalty by knowingly acting

against Storix while serving on Storix's board and Storix suffered damages of $3,739.14.  Based on this verdict, it is clear the jury rejected Storix's damages claim based on Johnson creating a competing product and awarded damages solely for Johnson's act of sending the customer email.

b. *Analysis*

Johnson contends the trial court erred in denying his motion to exclude the customer email based on the litigation privilege.  He maintains that because the only damages awarded by the jury arose from the loss of productivity Storix claims it incurred in repairing customer relations following the customer email, no damages would have been awarded had the court properly excluded the email.  And without damages, the judgment against him for breach of fiduciary duty must be reversed.

The litigation privilege in Civil Code section 47, subdivision (b) applies to any communication (1) in a judicial proceeding or quasi-judicial proceeding; (2) by a litigant or other participant authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action.  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 211- 212 (*Silberg*).)  The purpose of the privilege "is to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Id.* at p. 213.)  Generally, whether "a given communication is within the [litigation] privilege is an issue of law, and not fact." (*Nguyen v. Proton Tech. Corp.* (1999) 69 Cal.App.4th 140, 147; *Susan A. v. County of Sonoma* (1991) 2 Cal.App.4th 88, 93.)

Johnson satisfied the first two prongs of the litigation privilege.  On the first, the privilege pertains not only to statements made during a judicial proceeding or quasi-judicial proceeding, but also to steps taken before trial in contemplation of litigation.  (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 381.)

19

The second is satisfied because Johnson, a party to the copyright infringement action, sent the customer email.

However, Johnson did not meet the third or fourth prongs. On these prongs, the moving party must establish the communication sought to "achieve the objects of the litigation" and had "some connection or logical relation to the action." (*Silberg*, *supra*, 50 Cal.3d at pp. 211-212.) "[T]he *communicative act* . . . must function as a necessary or useful step in the litigation process and must serve its purposes." (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1146.) "The litigation privilege exists so that persons who have been harmed or have other grievances calling for redress through the judicial processes can and will use the courts, rather than self-help, to obtain relief." (*Ibid.*)

The object of Johnson's copyright litigation was to stop Storix from allegedly infringing on a copyright purportedly owned by Johnson. The customer email was unrelated to this objective. In the email, Johnson urged the customers to stop paying Storix, criticized the quality of the Storix software, and questioned Storix's financial viability, but told the customers they could continue using the software. This discussion was not a necessary or useful step in the copyright litigation. Johnson's expression of his personal views and opinions about Storix and the litigation had no functional relationship to the litigation. Rather, these statements are the type of "self-help" to which the litigation privilege does not apply, i.e., attempting to persuade third parties about the merits of pending litigation before the issues have been decided by the court.

This case is different from *Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903 (*Blanchard*), relied upon by Johnson. In *Blanchard*, "DIRECTV sent demand letters to thousands of people who purchased certain

20

devices that can pirate DIRECTV's television programming, requesting the recipients cease using the devices. Plaintiffs, recipients of these demand letters, filed [a] complaint against DIRECTV, alleging that the conduct of mailing the demand letters was an unfair business practice . . . ." (*Id.* at p. 909.) The Court of Appeal concluded the litigation privilege applied and the cease and desist letters were absolutely privileged as a communication *in serious contemplation of litigation against the customers*, noting DIRECTV did not need to sue every recipient to invoke the privilege. (*Id.* at p. 920.)

*Blanchard* is inapposite because Johnson did not send the customer email "in contemplation of litigation" against Storix's customers, or in any way suggest their continued business with Storix would subject them to potential liability for copyright infringement. To the contrary, Johnson informed the customers they *could* continue using the software, but told them to stop paying Storix for its use. Unlike in *Blanchard,* the customer email was not sent to achieve the object of any current or contemplated litigation.

Johnson alternatively argues the trial court abused its discretion by allowing Storix to discuss the customer email during closing argument as evidence of Storix's affirmative case against him. In support, he argues the trial court allowed the admission of the email solely as evidence relevant to the Individual Defendants' defense. He suggests that based on the court's ruling, he was surprised when Storix "introduc[ed] the claim" during "closing arguments," and asserts he did not have a fair opportunity to rebut this claim.

Even assuming Johnson did not forfeit this argument by failing to assert an objection during closing argument, the record does not factually support this assertion. The court never limited the admission of the email to issues relating to the Individual Defendants' defense, and Johnson was

21

clearly on notice that Storix intended to use the email as evidence to support its affirmative claims.

### 4. *Denial of Johnson's Motions for New Trial and JNOV*

Johnson moved for JNOV or for a new trial, asserting the jury's damage award against him was premised entirely on a communication protected by the litigation privilege, and Storix did not have board approval to bring the lawsuit. Johnson contends the trial court erred in denying both motions.

As discussed in the preceding sections, the litigation privilege did not apply to the customer email, and Storix had the capacity to bring the action. (*Ante*, pts. II. A1 & A3.) Thus, the trial court properly denied both motions.[9]

### B. *Johnson's Cross-Complaint in Fiduciary Duty Action*

With respect to his cross-complaint against the Individual Defendants, Johnson contends the court erred in granting the Individual Defendants' anti-SLAPP motion. He also raises several challenges to the court's jury instructions. We address each of these contentions below.

### 1. *Anti-SLAPP Motion*

The Individual Defendants filed an anti-SLAPP motion to strike Johnson's cross-complaint, arguing his allegations constituted protected activity under the statute. The trial court declined to strike the entire cross-complaint or an entire cause of action, but issued a minute order granting the motion in part as to certain language in the cross-complaint. The Individual Defendants then answered the cross-complaint.

---

[9] We have jurisdiction to consider Johnson's challenges to the postjudgment orders because these orders may be reviewed on appeal from the underlying judgment. (Code Civ. Proc., § 906.) In his Notice of Appeal, Johnson indicated he was appealing from these orders.

Johnson contends the trial court erred in striking the specified allegations from his cross-complaint. He also argues the trial court improperly awarded the Individual Defendants their attorney fees and costs as prevailing parties. The Individual Defendants counter that the trial court properly granted the motion.

After noting that Johnson did not appeal from the order granting the motion to strike or the related fees and costs order, we requested supplemental briefing on the timeliness of Johnson's appeal from these orders. Having reviewed these submissions, we conclude this portion of Johnson's appeal is untimely.

" 'Compliance with the requirements for filing a notice of appeal is mandatory and jurisdictional,' and an appellate court therefore must dismiss an appeal that is untimely." (*Starpoint Properties, LLC v. Namvar* (2011) 201 Cal.App.4th 1101, 1107.) Subject to certain exceptions not relevant here, an order granting or denying a special motion to strike a SLAPP cause of action is appealable. (Code Civ. Proc., §§ 425.16, subd. (i), 904.1, subd. (a)(13); *Reyes v. Kruger* (2020) 55 Cal.App.5th 58, 67 [grant]; *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 906 [same]; *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1317 [denial].) An appeal also lies if the trial court denies the motion as to some causes of action, for example where the complaint contains claims arising from both protected and unprotected activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381-382, 394; *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 866, fn. 4.) Additionally, an attorney fees and costs award to a prevailing defendant on an anti-SLAPP motion is directly appealable. (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 782.)

23

California Rules of Court, rule 8.104(a) specifies the deadline for filing a notice of appeal: the earlier of 60 days after service of notice of entry of judgment or 180 days after entry of judgment. These deadlines also apply to appealable orders. (Cal. Rules of Court, rule 8.104(e).)

The trial court issued a minute order on March 6, 2017, granting the anti-SLAPP motion in part. The court clerk served the parties with notice of entry of order that same day. Therefore, Johnson had 60 days, or until May 5, 2017, to appeal that order. Johnson filed his notice of appeal on December 10, 2018. Accordingly, Johnson's appeal from the order is untimely and we lack jurisdiction to review it.

After granting the anti-SLAPP motion, the trial court issued an order on May 12, 2017, awarding the Individual Defendants' attorney fees and costs on the motion. Neither the clerk nor any party served notice of entry of this order. Accordingly, Johnson had 180 days, or until November 8, 2017, to appeal from this order. Johnson did not file a notice of appeal before this date. His appeal from this order is also untimely and we lack jurisdiction to review it.[10]

## 2. *Claimed Instructional Errors*

Johnson contends the trial court erred in instructing the jury on his affirmative claims by: (1) giving an at-will employment instruction; (2) giving a waiver instruction; (3) refusing to instruct on majority shareholders duties

---

[10] In his supplemental brief, Johnson said he did not file a notice of appeal in order to avoid piecemeal litigation. Although we understand Johnson's objective, his concern is misplaced. Had he timely appealed from the orders, the appeal would have automatically stayed all further trial court proceedings on the merits upon the causes of action affected by the motion. (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 654-655.)

specific to Johnson's claims; and (4) refusing his business judgment rule instruction and giving a misleading instruction on this subject.

### a. *General Legal Principles*

A party is entitled to instructions on his or her theory of the case. (*Sills v. Los Angeles Transit Lines* (1953) 40 Cal.2d 630, 633.) The trial court's duty "is fully discharged if the instructions given by the court embrace all the points of the law arising in the case." (*Hyatt v. Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 335.)

"A judgment may not be reversed on appeal, even for error involving 'misdirection of the jury,' unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 (*Soule*).) "Instructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.' " (*Id.* at p. 580.) "Actual prejudice must be assessed in the context of the individual trial record." (*Ibid.*)

### b. *At-Will Employment and Waiver Instructions*

#### i. *Background*

Johnson's cross-complaint alleged he was entitled to a position at Storix and the Individual Defendants breached a fiduciary duty owed to him by denying him a position.

At trial, Johnson testified the Individual Defendants breached a fiduciary duty owed to him by "oust[ing him] from the company as an employee" and said he had "a reasonable entitlement to a position at the company." In support, he called an expert who opined on the value of his lost salary and benefits.

Board president and CEO Huffman testified he "had the power to terminate at will" and "the power to decide whether or not [Johnson] could come back or not[.]" Huffman claimed Johnson never contacted him about wanting to come back to work at Storix, and that Johnson told Altamirano he would come back only if Huffman left the company and if Johnson had control over the software.

At the Individual Defendants' request, the trial court instructed the jury regarding at-will employment as follows: "In California, employment is presumed to be 'at will.' That means that an employer may discharge an employee for no reason, or for a good, bad, mistaken, unwise, or even unfair reason, as long as its action is not for a discriminatory reason."

The court also instructed regarding the Individual Defendants' waiver affirmative defense as follows:

> "[Defendants] claim that they did not have to rehire [Johnson] because [he] gave up his right to have future employment. This is called a 'waiver.'
>
> "To succeed, . . . Defendants must prove both of the following by clear and convincing evidence: [¶] "1. That . . . Johnson knew . . . Defendants were required to rehire him; and [¶] "2. That . . . Johnson freely and knowingly gave up his right to have . . . Defendants do so.
>
> "A waiver may be oral or written or may arise from conduct that shows . . . Johnson gave up that right. [¶] "If . . . Defendants prove that . . . Johnson gave up his right to continued employment, then . . . Defendants were not required to rehire him."

### ii. *Analysis*

Johnson contends the trial court erred by giving the at-will employment instruction because it was "irrelevant and misleading." He argues he did not assert a wrongful termination claim and the instruction

26

was not relevant to his claim that the Individual Defendants breached a fiduciary duty by refusing him a position at Storix.

We note initially the record does not show Johnson objected to this instruction at trial. Before jury instructions, counsel and the court met off the record to review the jury instructions and verdict form. The next day, the court allowed counsel to set forth their arguments on the record. During this discussion, Johnson's counsel did not assert any challenge to the at-will employment instruction.

Even assuming Johnson preserved the issue without an objection (see *Lund v. San Joaquin Valley Railroad* (2003) 31 Cal.4th 1, 7), the court did not err in giving the at-will instruction. The instruction was a correct statement of the law, and was relevant to Johnson's testimony that the Individual Defendants breached a fiduciary duty *by ousting him* or refusing him a position at Storix. Johnson alleged he had a reasonable expectation to a position at the company and that the Individual Defendants breached their fiduciary duty to him by refusing to permit him to work at the company. During trial, both sides argued regarding this theory of recovery.

In any event, any error in giving the instruction was harmless. (*Guernsey v. City of Salinas* (2018) 30 Cal.App.5th 269, 282.) Generally, giving an irrelevant or inapplicable instruction is only a technical error that does not constitute ground for reversal. (*Smith v. Sugich Co.* (1960) 179 Cal.App.2d 299, 311; see *People v. Cross* (2008) 45 Cal.4th 58, 67.) This is because we are required to assume the jury disregarded factually inapplicable instructions. The court specifically told the jury: "After you have decided what the facts are, you may find that some instructions do not apply. In that case, follow the instructions that do apply and use them together with the facts to reach your verdict." (See CACI No. 5000.)

The record does not support an exception to this rule.  Johnson's theory at trial was that he had a right to employment because of his status as a shareholder and director, not because he had some contractual right to employment.  The at-will instruction did not preclude him from arguing that he was not an at-will employee and/or even if he was an at-will employee, the Individual Defendants breached their fiduciary duties owed to a minority shareholder by ousting him and/or not rehiring him.  On this record, there is no reasonable probability the instruction prejudicially affected the verdict.

As to the related waiver instruction (set forth above), Johnson contends the instruction was not factually supported.  However, the Individual Defendants specifically alleged waiver as an affirmative defense, and at trial asserted this defense based on Johnson's testimony he resigned his employment at Storix.  To the extent Johnson contends his right to future employment could not be waived, Johnson cites no authority to support this argument and we treat it as forfeited.  (See *Horowitz v. Noble* (1978) 79 Cal.App.3d 120, 139.)

c. *Majority Shareholder Duty Instruction*

i. *Background*

Johnson proposed a modified version of CACI "4100 'Fiduciary Duty' Explained (Modified)" (the proposed instruction)[11] which read:

> "Majority shareholders, either singly or acting in concert to accomplish a joint purpose owe what is known as a fiduciary duty to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner.  A fiduciary duty imposes on majority shareholders a duty to act with the utmost good faith in the

---

[11]    The proposed instruction was omitted from the clerk's transcript; however, we granted Johnson's unopposed request to augment the record, which includes the proposed instruction.

28

best interests of the corporation and the minority shareholders.

"Majority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority. Any use to which they put the corporation or their power to control the corporation must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business.

"*When a minority shareholder holds a reasonable expectation of employment with the corporation, majority shareholders may breach their fiduciary duties by denying the minority shareholder a position with the company.*" (Italics added.)

The trial court ultimately instructed with CACI No. 4100 (" 'Fiduciary Duty' Explained"), describing the phrase "fiduciary duty" as follows: "A corporate director owes what is known as a fiduciary duty to his/her corporation and the corporation's shareholders. A fiduciary duty imposes on a corporate director a duty to act with the utmost good faith in the best interests of his/her corporation and the corporation's shareholders."

Immediately thereafter, the court gave a special instruction entitled "Majority Shareholder Fiduciary Duties," which included the first two paragraphs of the proposed instruction, but omitted the italicized paragraph[12] regarding a minority shareholder's reasonable expectation of employment.

ii. *Analysis*

Johnson argues that omitting the disputed paragraph rendered the instruction meaningless to his claim for continued employment. Johnson admits he withdrew the proposed instruction, but claims he did so only after

_____

[12] We refer to the italicized language as the "disputed paragraph."

29

the court indicated it would be combined with another instruction to create a new instruction. The new instruction did not include the disputed paragraph.

The Individual Defendants respond that Johnson waived his objection and cannot assert it on appeal because he withdrew the instruction containing the disputed paragraph and his counsel presented the special instruction "Majority Shareholder Fiduciary Duties" which all counsel accepted and the trial court used. Even if Johnson did not waive this argument, the Individual Defendants assert that the disputed paragraph proposed by Johnson, and the non-binding authority he cited in support of the disputed paragraph, do not support his argument that he was entitled to continued employment as a 40 percent shareholder. We conclude that Johnson forfeited this argument. But even if not forfeited, we would find that it fails on the merits.

After the close of evidence, the court held an off-the-record discussion with counsel regarding jury instructions, noting that counsel would be allowed to make a record the following morning. The following day, counsel for the Individual Defendants noted that Johnson's counsel sent a "revised shareholder fiduciary duty instruction." The following discussion then took place:

> "[INDIVIDUAL DEFENDANTS' COUNSEL]: -- [W]e have no issues with it. It's an issue now of location in the jury instructions, and I would suggest that it replace 4100 and the modified 4100 that we talked about yesterday.
>
> "THE COURT: In other words, following 4100?
>
> "[INDIVIDUAL DEFENDANTS' COUNSEL]: Instead of 4100, Your Honor.
> "THE COURT: In other words, not give CACI 4100?

"[INDIVIDUAL DEFENDANTS' COUNSEL]:  No.  I think we were going to do that yesterday.  It was -- no.  It was right after 4100, CACI.  That's right.  I'm sorry.

"THE COURT:  But the language as modified by [plaintiff's counsel] is agreeable?

"[INDIVIDUAL DEFENDANTS' COUNSEL]:  Yes, Your Honor, so it comes right after 4100.

"THE COURT:  And, [Storix's counsel], agreeable?

"[STORIX COUNSEL]:  That's fine, Your Honor.

"THE COURT:  And thank you, [Johnson's counsel], for doing that.  I'll give it right after 4100."

Johnson's counsel raised no objection on the record regarding removal of the disputed paragraph.  The minute order for this date does not state what transpired during the off-the-record discussion.  The court subsequently instructed with CACI No. 4100 and then gave the instruction proposed by Johnson's counsel entitled "Majority Shareholder Fiduciary Duties," which included the first two paragraphs set forth above, but omitted the disputed paragraph regarding a minority shareholder's reasonable expectation of employment.

The record shows that the court never ruled on the controversy surrounding the disputed paragraph.  Rather, the record suggests that Johnson withdrew the proposed instruction containing the disputed paragraph, presented an instruction without the disputed paragraph, and all counsel agreed to the instruction ultimately given.  "A party who has agreed at the trial that an instruction proposed by him shall be deemed withdrawn cannot contend on appeal that the instruction should have been given." (*Swails v. General Elec. Co.* (1968) 264 Cal.App.2d 82, 85.)  Accordingly,

31

Johnson forfeited the asserted error regarding omission of the italicized language.

Even if the issue was not forfeited, Johnson has not demonstrated any prejudicial error in the failure to instruct the jury with the disputed paragraph.

Johnson cited no authority in his opening brief to support giving the disputed paragraph. In his reply brief, Johnson cited out-of-state authority to support instructing with the disputed paragraph. Out-of-state authority is not binding on California courts. (*Doe v. Occidental College* (2019) 37 Cal.App.5th 1003, 1018, fn. 2.) Additionally, the cases cited by Johnson during his rebuttal oral argument (*Neider v. Dardi* (1955) 130 Cal.App.2d 646 and *Brown v. Allied Corrugated Box Co.* (1979) 91 Cal.App.3d 477) do not assist him because these cases do not relate to this issue. In any event, we are not convinced that removal of the disputed paragraph prejudiced Johnson.

"Instructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.' [Citations.] Of course, that determination depends heavily on the particular nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury." (*Soule, supra*, 8 Cal.4th at p. 580.) When deciding whether an error of instructional omission was prejudicial, actual prejudice must be assessed in the context of the individual trial record, including "(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Id.* at pp. 580-581.)

Johnson's briefs attempt no such analysis. Moreover, our independent review of the record shows that the parties fully litigated Johnson's right to

continued employment. The jury heard evidence that Johnson resigned his employment, that Huffman and Turner were disappointed with this decision, and both tried to convince Johnson to change his mind. Johnson's last day at Storix was May 22, 2014. A month after he left, Johnson noted that Storix hired someone new. He testified at that point, "this kind of confirmed that they had no intention of keeping me there."

Johnson then reached out to Altamirano to help him "open a dialogue with the other [director] defendants in order to try to resolve our differences and find a way to work together again." Altamirano spoke to the other Individual Defendants and communicated to Johnson that they did not want him back. After Johnson threatened copyright litigation as leverage, the Individual Defendants asked him to document his conditions for returning to Storix.

Johnson responded with an email to Altamirano dated July 16, 2014, stating that, among other things, Huffman and Turner needed to immediately resign from the board for him to return to Storix. Johnson claimed this was the first time he placed conditions on his return. The Individual Defendants, as a group, decided that Johnson's return "wasn't the best for the company" and that "the conditions that came along with him returning were not acceptable."

The "Majority Shareholder Fiduciary Duties" instruction accurately informed the jury of the concept that majority shareholders owe a fiduciary duty to minority shareholders. During closing argument, Johnson's counsel informed the jury that the Individual Defendants' "betrayal" occurred when they initially refused his request to return. The Individual Defendants' counsel interpreted the evidence differently, arguing to the jury that no betrayal occurred.

Thus, the parties tendered to the jury the issue whether the Individual Defendants breached a fiduciary duty to Johnson by denying him employment after his resignation. On this record, it is unlikely the jury would have found that, after his resignation, Johnson reasonably expected future employment with Storix, or that the Individual Defendants breached a fiduciary duty to Johnson when they decided that Johnson's return was not in the corporation's best interest. Significantly, in deciding whether to bring Johnson back, the Individual Defendants, as majority shareholders, had an obligation to be fair to Johnson, but were also required to act in the best interest of the corporation. (*Jones*, *supra*, 1 Cal.3d at p. 108 [majority shareholders "have a fiduciary responsibility to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner."].)

Accordingly, Johnson has not met his burden to show the failure to instruct with the disputed paragraph prejudiced him. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside, . . . on the ground of misdirection of the jury, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].)

d. *Business Judgment Instruction*

Except for the bracketed language noted below, the trial court instructed the jury on the business judgment rule as follows: "The business judgment rule is a presumption that in making a business decision [in their capacity as directors] the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." Over Johnson's objection, the court refused his request to include the bracketed language, finding it was "redundant

34

because [the instruction is] clearly talking about the directors of the corporation. . . ."

"The business judgment rule is premised on the notion that management of the corporation is best left to those to whom it has been entrusted, not to the courts. [Citation.] The rule requires judicial deference to the business judgment of corporate directors so long as there is no fraud or breach of trust, and no conflict of interest exists. [Citations.] The rule has been codified in section 309, which requires a director to perform 'in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.' " (*Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 183, footnotes omitted.)

Although not entirely clear, Johnson appears to contend the deletion of the bracketed language from the instruction made it misleading. We disagree. As the trial court noted, the instruction properly informed jurors the business judgment rule pertained to the decisions of corporate directors. Adding the phrase "in their capacity as directors" was redundant. (*Mathis v. Morrissey* (1992) 11 Cal.App.4th 332, 343 ["reversal of a judgment may not be based upon the failure to give particular instructions if the point is covered adequately by instructions which were given"].)

To the extent Johnson contends the court erred in not allowing him to testify as an expert on corporate governance issues, we disagree. The Individual Defendants moved in limine for an order precluding Johnson from testifying as an expert witness on corporate governance issues because he failed to qualify as an expert on these issues. The trial court granted the motion after Johnson's counsel stated he did not oppose it. Accordingly,

35

Johnson forfeited his right to challenge the court's ruling on appeal. (*Mangano v. Verity, Inc.* (2009) 179 Cal.App.4th 217, 221.)[13]

### III. *Shareholder's Derivative Action*

Johnson contends the court erred in denying his motion to release his shareholder plaintiff's bond. We determine there was no error.

### A. *Background*

After Johnson and Sassi filed the derivative action on Storix's behalf, the Individual Defendants moved under section 800 for an order requiring the derivative plaintiffs to post a $50,000 bond to represent Storix. The Individual Defendants asserted there was no reasonable probability that prosecuting the derivative complaint would benefit Storix or its shareholders. Johnson then voluntarily posted the bond and defendants withdrew their motion. Johnson was the only principal on the bond.

The Individual Defendants then moved to dismiss the derivative action on the ground Johnson and Sassi could not fairly and adequately represent Storix's interests. The court deferred the decision until trial. At the conclusion of the jury trial in the fiduciary duty action, the court determined that as a result of the adverse verdict against Johnson, he could not properly represent Storix's interest, but allowed the bench trial on the derivative action to proceed with Sassi as the plaintiff. Ultimately the court found in favor of the Individual Defendants on all causes of action in the derivative action.

---

13    Johnson contends the court's combined instructional errors were highly prejudicial to his cross-claims. Because we have either concluded no instructional error occurred, or the asserted error was waived, we reject Johnson's cumulative-error claim.

After the trial court issued its consolidated judgment, Johnson moved to release his shareholder-plaintiff's bond. He claimed the bond should be released to him because the trial court found he had no standing to represent Storix, and therefore he was never a plaintiff and the bond's purpose was abandoned.

In October 2018, Storix and the Individual Defendants filed their cost bills. In response, Johnson moved to strike or tax the claimed costs. The court denied the motion to release the shareholder plaintiff's bond on November 16, 2018. Within days, the Individual Defendants moved for an award of attorney fees under section 800 as the prevailing parties in the derivative action.

## B. *Shareholder Bond*

Section 800 states "the terms and conditions under which a shareholder derivative action may be maintained." (*West Hill Farms, Inc. v. RCO Ag Credit, Inc.* (2009) 170 Cal.App.4th 710, 715.) "[T]he essential purpose of the . . . bond statute is to create a deterrent to unwarranted shareholder derivative lawsuits by providing a mechanism for securing a prevailing defendant's expenses up to $50,000." (*Donner Management Co. v. Schaffer* (2006) 142 Cal.App.4th 1296, 1308 (*Donner*).) Accordingly, a defendant in a shareholder derivative action may move the court for an order requiring the plaintiff to post a bond not to exceed $50,000, to secure payment of the defendant's attorney fees. (§ 800, subds. (c) & (d).) If the derivative plaintiff obtains no recovery for the corporation, the corporation may recover its litigation expenses from the security, including corporate payments under section 317 to indemnify officers and directors named in the action. (§ 800, subd. (d); *Brusso v. Running Springs Country Club, Inc.* (1991) 228 Cal.App.3d 92, 103.) "If the corporate agent accused of wrongdoing wins a

judgment on the merits in defense of the action, indemnification is *mandatory*." (*Groth Bros. Oldsmobile, Inc. v. Gallagher* (2002) 97 Cal.App.4th 60, 73.)

Johnson challenges the order denying the release of his shareholder-plaintiff's bond, claiming the bond's purpose was abandoned before any liability had been incurred (Code. Civ. Proc., § 995.430, subd. (b)), and the bond was no longer in force and effect (Code. Civ. Proc., § 995.360, subd. (b)). He appears to argue that both conditions were satisfied when the trial court found he lacked standing to pursue the shareholder derivative suit leaving Sassi, who was not a principal on the bond, as the only shareholder-plaintiff to prosecute the action.

The court's determination that Johnson lacked standing to bring the derivative suit did not insulate him from a subsequent attorney fees award under section 800. (See *Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1038-1039 ["[M]andatory attorney's fees and costs award under [Civil Code] section 1354, subdivision (c), applies when a plaintiff brings an action to enforce such governing documents, but is unsuccessful because he or she does not have standing to do so."]; *Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 384, fn. 7 ["[A]ny lack of standing by [plaintiff] to bring the lawsuit does not alter the fact that [plaintiff] sued [defendant] to enforce the contract, thereby entitling the prevailing party to its attorney's fees."].)

The purpose of the bond is to "[deter] unwarranted shareholder derivative lawsuits by providing a mechanism for securing a prevailing defendant's expenses up to $50,000." (*Donner*, *supra*, 142 Cal.App.4th at p. 1308.) Although the trial court found Johnson lacked standing to prosecute the derivative action on Storix's behalf, Johnson had an active role

38

in pursuing the derivative action as a plaintiff for four years. On this record, denying Johnson's motion and releasing the bond to Storix accomplished the purpose of the bond statute.

Johnson's reliance on Code of Civil Procedure section 995.430, subdivision (b) is misplaced. That code section provides a bond remains in force and effect until "[t]he purpose is abandoned without any liability having been incurred." (*Ibid.*) Johnson has not shown he abandoned the purpose of the bond, such as dismissing the derivative action. Rather, the derivative action went to trial on the merits, after which Johnson incurred liability on the bond.

We similarly find unhelpful Johnson's reliance on Code of Civil Procedure section 995.360, subdivision (b). That code section states a bond given in an action may be withdrawn from the file and returned to the principal "on order of the court" if "[t]he bond is no longer in force and effect and the time during which the liability on the bond may be enforced has expired." (*Ibid.*) Johnson has not cited to anything in the record showing he sought a court order to withdraw the bond from the file and return it to him.

IV. *Fees and Costs Award in Fiduciary Duty and Derivative Actions*

After the court denied Johnson's motion to release the bond to him, Storix moved for fees, and Storix and the Individual Defendants later moved for costs. Over Johnson's opposition, the court entered an order awarding $50,000 in attorney fees to Storix, and $24,493.53 in costs to Storix and $55,712.76 in costs to the Individual Defendants.

On appeal, Johnson raises numerous challenges to the court's fee/cost order, including that the Individual Defendants were not the prevailing parties and incurred no expenses in the derivative suit; Storix is not entitled

39

to costs or fees after unlawfully defending its own claims; and the trial judge displayed judicial bias in ordering him to pay costs.

We have no jurisdiction to review these contentions because Johnson failed to appeal from the postjudgment cost and attorney fees awards.

The trial court entered the judgment in the Storix action on September 12, 2018. The judgment was silent as to attorney fees and costs. Johnson filed his notice of appeal in December 2018. Thereafter, in January 2019, the trial court awarded the Individual Defendants their attorney fees in the derivative action, and in August 2019, the court issued its ruling on Johnson's motion to tax or strike costs. Johnson did not appeal from these postjudgment orders.

A postjudgment order awarding or denying costs or attorney fees is separately appealable under Code of Civil Procedure section 904.1, subdivision (a)(2). (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46 [costs]; *Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1015 [attorney fees].) Because Johnson failed to appeal from the orders awarding costs and attorney fees we have no jurisdiction to review them. (*Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 666-667.)

We similarly have no jurisdiction to address Johnson's contention that the trial judge displayed judicial bias in ordering him to pay costs. However, based on the inherent seriousness of this assertion and our extensive review of the record, we note that we have found Johnson's bias claim to be without merit as it is based solely on the court's adverse rulings concerning attorney fees and costs. As aptly noted in *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1219, "When making a ruling, a judge interprets the evidence, weighs credibility, and makes findings. In doing so,

40

the judge necessarily makes and expresses determinations in favor of and against parties. . . . We will not hold that every statement a judge makes to explain his or her reasons for ruling against a party constitutes evidence of judicial bias."

## V. *Malicious Prosecution Action*

### A. *Background*

After the jury verdict against Johnson in the fiduciary duty action and the court's decision in the derivative action, the trial court entered a consolidated judgment in favor of (1) Storix on its complaint in the fiduciary duty action; (2) the Individual Defendants on Johnson's cross-complaint; and (3) the Individual Defendants in the derivative action. Undeterred, Johnson filed a separate action against the Individual Defendants (except for Smiljkovich) for malicious prosecution, breach of fiduciary duty, conversion, economic interference, fraud/constructive fraud, and civil conspiracy.

Johnson's malicious prosecution claim alleged these defendants directed Storix's counsel to file the fiduciary duty complaint against him without probable cause and without board approval and the action terminated on the merits in Johnson's favor. He asserted the Individual Defendants personally authorized the complaint to be filed, knew the claims were false, and could have ended the litigation. Johnson claimed he was harmed by having to defend against Storix's lawsuit.

The defendants countered by filing an anti-SLAPP motion challenging Johnson's claims. Johnson responded by voluntarily dismissing the action without prejudice.

The defendants then filed a costs memorandum and a motion for attorney fees seeking fees permitted by the anti-SLAPP statute. Judge Bacal awarded defendants $2,364.45 in costs and attorney fees of $12,237.50.

41

Johnson contends the court erred in finding he did not show a probability of success on his malicious prosecution claim. He alternatively argues we should reverse the fees and cost awards because defendants incurred no attorney fees or costs and/or the amounts awarded were excessive.

B. *Legal Principles*

A special motion to strike allows a defendant to gain early dismissal of a lawsuit that qualifies as a SLAPP. (Code Civ. Proc., § 425.16, subd. (a).) In ruling on this motion, the trial court must first decide whether the moving defendant has established the plaintiff's suit is subject to the anti-SLAPP statute. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) If the defendant meets this burden, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. (*Ibid*.)

"[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." (Code Civ. Proc., § 425.16, subd. (c)(1).) When a plaintiff voluntarily dismisses the action after an anti-SLAPP motion has been filed but before the court rules on the merits of the motion, the trial court retains jurisdiction to award attorney fees. (*Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869, 878-879.)

In this situation, a majority of the Courts of Appeal require that the trial court determine the merits of the anti-SLAPP motion notwithstanding the prior dismissal of the underlying suit. If the motion would have been granted absent the dismissal of the complaint, then the court is required to award attorney fees and costs incurred in preparing the motion to strike. (See *Tourgeman v. Nelson and Kennard* (2014) 222 Cal.App.4th 1447, 1457; *Pfeiffer Venice Properties v. Bernard* (2002) 101 Cal.App.4th 211, 218; *Liu v. Moore* (1999) 69 Cal.App.4th 745, 752; compare, *Coltrain v. Shewalter* (1998)

66 Cal.App.4th 94, 107 [suggesting a court may award attorney fees and costs without first determining whether defendant would have prevailed on the anti-SLAPP motion].) Accordingly, we review the merits of the anti-SLAPP motion. We disregard Johnson's reasons why he dismissed the complaint as irrelevant to the analysis.

## C. *Merits Analysis*

" 'To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice.' " (*Lanz v. Goldstone* (2015) 243 Cal.App.4th 441, 458.) To determine whether there was a favorable termination we review the judgment in the prior action. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341-342.)

We examine the " ' "judgment as a whole" ' " when determining whether favorable termination exists. (*Staffpro, Inc. v. Elite Show Servs., Inc.* (2006) 136 Cal.App.4th 1392, 1403 (*Staffpro*).) Under this rule, it is not sufficient that some of the claims in the prior action terminated in favor of the malicious prosecution plaintiff; rather, for a malicious prosecution claim to lie "there must first be a favorable termination of the *entire* action." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 686; *Lane v. Bell* (2018) 20 Cal.App.5th 61, 72 (*Lane*).)

Johnson concedes his malicious prosecution claim arose out of protected activity, but maintains he has established a probability of prevailing on his claim. He argues that because the jury rejected Storix's $1.2 million "unfair head start" claim and awarded Storix only $3,739.14 for lost employee productivity on their breach of fiduciary duty cause of action, we should sever

43

the employee-productivity claim from the unrelated "unfair head start" claim and declare he prevailed.

The argument is unavailing because Storix's breach of fiduciary duty claim is not severable.  The fact Storix's claim for unfair head-start damages terminated in Johnson's favor is insufficient to establish Johnson prevailed against Storix.  (*Staffpro*, *supra*, 136 Cal.App.4th at p. 1405 ["[S]everability analysis is improper in determining whether a malicious prosecution plaintiff has demonstrated favorable termination of an underlying lawsuit."].)

Because the entire Storix action was not terminated in Johnson's favor, he cannot establish the essential element of favorable termination and his malicious prosecution claim fails.  (*Lane*, *supra*, 20 Cal.App.5th at pp. 66, 76 [malicious prosecution plaintiffs could not establish the essential element of favorable termination because the entire underlying action was not terminated in their favor].)  Thus, the trial court properly awarded defendants their reasonable attorney fees and costs in bringing the anti-SLAPP motion.  (Code Civ. Proc., § 425.16, subd. (c)(1).)

D.  *Additional Contentions*

Johnson alternatively claims the trial court erred in awarding the attorney fees and costs because these defendants incurred no expenses, citing evidence that Storix indemnified them and advanced their legal expenses. Johnson cites no authority to support this contention, and numerous courts have rejected the argument that a prevailing party is entitled to an attorney fees award only if the party actually paid or became liable to pay the fees. (See *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1192-1193; see also *Lolley v. Campbell* (2002) 28 Cal.4th 367, 373 [employee represented without charge by Labor Commissioner entitled to award of attorney fees as prevailing party]; *Ketchum v. Moses* (2001) 24 Cal.4th 1122,

44

1141-1142 [party represented on a contingency basis recovered fees under Code Civ. Proc., § 425.16, subd. (c)]; *In re Marriage of Ward* (1992) 3 Cal.App.4th 618, 623-626 [attorney fees may be awarded to legal services organizations who represent clients pro bono]; *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1410 ["Plaintiffs were not entitled to avoid their contractual obligation to pay reasonable attorney fees based on the fortuitous circumstance that they sued a defendant who obtained insurance coverage providing a defense."].)

Johnson also asserts the attorney fees award amount was unreasonable given Storix's limited success. "The amount of an attorney fee award under the anti-SLAPP statute is computed by the trial court in accordance with the familiar 'lodestar' method. [Citation.] Under that method, the court 'tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work.' " (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 491.) The attorney fee award should ordinarily include compensation for all hours reasonably spent on the anti-SLAPP and fees motions. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1321.) The prevailing defendant has the burden of establishing his or her entitlement to fees, including the reasonable amount of those fees, by documenting the hours expended and hourly rates. (*Id.* at p. 1320.)

"A trial court's exercise of discretion concerning an award of attorney fees will not be reversed unless there is a manifest abuse of discretion. [Citation.] ' "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while [this] judgment is of course subject to review, it will not be disturbed unless the appellate court is

convinced that it is clearly wrong['] — meaning that it abused its discretion." ' " (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239.)

The trial court concluded these defendants demonstrated a probability of prevailing on the first cause of action against them for malicious prosecution. The trial court properly employed the lodestar method in determining an appropriate attorney fees award. These defendants lodged attorney invoices and the declaration of the attorney who handled the motion. This declaration established the hours worked and the billing rates for the attorneys and paralegals. The invoices described the legal services provided in sufficient detail and indicated who performed the tasks. Significantly, Johnson did not challenge the itemized billings with evidence that the claimed attorney fees were inappropriate, nor did he submit a declaration of an attorney with relevant expertise to demonstrate the fees and billing rates were unreasonable.

Defendants requested $15,625 in attorney fees. Based on their partial success on the motion and the court's finding that some of the requested fees pertained to unrelated issues, the trial court awarded $9,027.50 for time spent on the anti-SLAPP motion. The court awarded an additional $3,210 for preparing the attorney fees motion. Johnson has not identified any valid grounds for overturning the trial court's exercise of discretion. Accordingly, we cannot conclude the amount of attorney fees awarded was unreasonable.

Under Code of Civil Procedure section 425.16, subdivision (c), the malicious prosecution defendants are also entitled to recover their costs and attorney fees on appeal as to this anti-SLAPP issue. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785.)

## DISPOSITION

The judgment in San Diego County Superior Court Case No. 37-2015-00034545-CU-BC-CTL is affirmed.

The order in San Diego County Superior Court Case No. 37-2019-00002457-CU-BT-CTL is affirmed and the case is remanded to the trial court with directions to conduct further proceedings as are appropriate with respect to an award of attorney fees incurred in this aspect of the appeal only.

Appellant to bear respondents' costs in these consolidated appeals.


HALLER, Acting P. J.

WE CONCUR:


IRION, J.


GUERRERO, J.

47